## SKIDMORE v. EIKENBERRY.

1. **Contract:** CONSTRUCTION: CONDITIONAL LIABILITY. Under a contract binding the defendant to pay a certain price for a tract of land in case he found a vein of good merchantable coal, not less than four feet in thickness, in a shaft then being sunk by him on the land, it was held that it was his duty to make a reasonable effort to find coal of the character described, in view of the depth of the known veins in the vicinity, and by using the ordinary and usual methods and appliances, and that what constituted such reasonable effort was a question for the jury, under all the evidence.

*Appeal from Lucas Circuit Court.*

WEDNESDAY, JUNE 9.

ON the first day of September, 1876, the plaintiff sold to the defendant seventy-eight acres of land, for which the defendant paid down the sum of $1,500 and executed three written obligations for the payment of the further sum of

$1,561. These obligations are all ·alike except as to amount and time of payment. A copy of the one first maturing is as follows:

"CHARITON, September 1, 1876.

"In case I find good, merchantable coal, not less than four feet in thickness, in shaft now being sunk on land this day bought of Mayberry Skidmore, I promise to pay Mayberry Skidmore two hundred and seventy-two dollars and eighteen cents, with ten per cent interest from ●December 1, 1876, on April 1, 1877; if not so found this obligation to be void.

DANIEL EIKENBERRY."

The other obligations are payable on the 1st day of December, 1877 and 1878, respectively. On the 20th day of August, 1879, this action was commenced for the recovery of the sums mentioned in these obligations. The petition alleges that if the defendant did not strike coal four feet in thickness in said shaft it is owing to his negligence in not sinking the shaft to a sufficient depth. Prior to the introduction of any testimony the plaintiff dismissed his cause of action as to the obliga. tions due December 1, 1877 and 1878. There was a jury trial, and a verdict and judgment for the defendant. The plaintiff appeals. The material facts are stated in the opinion.

*Mitchell & Penick*, for appellant.

*Stuart Bros.* and *Thorpe & Sons*, for appellee.

DAY, J.—I. On the 24th of February, 1876, the defendant leased from the plaintiff two hundred and eighty acres

1. CONTRACT: construction: conditional liability.

of land, including the seventy-eight acres subsequently purchased, and commenced sinking thereon, near the south end of the purchased land, the shaft in controversy. This shaft was about one hundred feet deep at the time of the purchase. At the time of the defendant's purchase the White Breast Coal Mining Company had struck a four foot vein of coal at the depth of

two hundred and fifty feet in a shaft located about one-half mile north and one-half mile east of the defendant's shaft. The evidence shows that the veins of coal dip and rise, corresponding somewhat to the surface of the ground. The vein of the White Breast Coal and Mining Company dipped to the north and east. It appears from the evidence that fire-clay underlies all veins of coal, and that "faults" sometimes occur in the vein where the coal entirely disappears, but that the fire-clay is still found in such places. Boulders are frequently found in the coal, sometimes occupying more than the entire thickness of the vein. In driving an entry west of the White Breast shaft a fault was struck running southwest which the miners did not drive through. South and west of the White Breast shaft the coal was more rocky than north and east. The defendant sunk his shaft to the depth of three hundred feet, and then drilled thirty-seven feet more. At fifty-two and one-half feet from the surface a seventeen inch vein of coal was struck. The next vein was fourteen inches thick, seventy-four and one-third feet from the surface. Eighteen feet under that was an eighteen inch vein. Next was found an inch vein of coal in slate with no fire-clay under it; six or eight feet under that was found four inches of coal. At one hundred and ninety-nine feet a scale of coal was struck. At two hundred and twelve feet a sand-rock was struck which was fifty feet through. Near the bottom of the shaft an inch and a half of coal was struck. Under all of these veins, except the one in the slate, fire-clay was found. No fire-clay was found at any place where coal was not found. The drill passed through eight inches of coal and then into a hard rock, resembling a boulder, four feet, when work was stopped. The defendant spent five thousand dollars on the shaft, besides eleven hundred and sixty-six dollars for an engine, and a further sum for an engine house. The evidence shows that a dip of seventy-five feet in three-fourths of a mile would not be unusual. The surface of the ground at the defendant's shaft is about ten or fifteen feet higher than at

the White Breast shaft. After the defendant quit work the Lucas Coal and Mining Company sunk a shaft near the north end of the eighty, nearly one-half mile north of the defendant's shaft, and found a good four foot vein of coal at the depth of three hundred and thirty-four feet. The surface of the ground at the Lucas shaft is from twenty-five to thirty-five feet higher than at the White Breast shaft.

The important question involved, and the one decisive of all the errors discussed, is the proper construction of the written obligations. The plaintiff in various forms asked the court to instruct that it was the duty of the defendant under the contract to sink the shaft to the lowest depth at which it would be practical to operate a four foot vein of merchantable coal, unless the evidence shows affirmatively that the defendant at such depth would not have found a four foot vein of coal. The court refused all the instructions asked, and instructed the jury as follows:

" 1. Under the contract in question in this case, if you find said note was given as part consideration for the purchase of the eighty acres on which said shaft was located, and that the defendant was engaged in sinking a shaft on said land at the time under the lease in evidence in this case, then, under this contract the defendant would be bound to make a reasonable effort to find coal of the character described in the contract, and if he neglected so to do, then he would be liable under the contract for said money.

" 2. But under said contract he would not be under an obligation to sink said shaft to an extraordinary depth, but he would only be required to sink it to the ordinary depth at which such coal was found, in view of the known depth of the coal veins at the time he was engaged in sinking said shaft, using the ordinary and usual means and appliances in so doing, and such expenditure of money in so doing as was usual, ordinary and reasonable, in view of the knowledge then existing of the coal veins in the country; and if you find that the defendant has so done, and a vein of coal of the depth

and character not found, then the defendant is not liable; that is to say, unless the defendant actually reached with the shaft a vein of coal of the depth and character provided by the contract, he would not be liable, unless he failed to make a reasonable effort so to do, as before defined.

"3. The defendant is not bound to experiment and see if coal could be found at a depth beyond which such coal could be reasonably expected to be found.

"4. In determining whether or not the defendant sunk the shaft to a reasonable depth, you should consider the depth of other shafts and coal of the character described by the contract in the country, and the depth of the shaft sunk, the cost and expense of sinking the same, and the expenditure actually made in so doing, and the information and knowledge then existing with reference to the veins below the surface in this part of the country, and the difficulty and cost of operating said shaft.

"5. The fact that, since the shaft has been abandoned, coal has been found at another point on said land cannot be considered in determining whether or not defendant made a reasonable effort.

"6. Defendant was not necessarily bound to sink said shaft to the lowest depth that it would pay to operate a coal mine; he was simply required to sink said shaft to a reasonable depth, taking into consideration the depth at which such vein of coal has been found in other coal shafts in the same neighborhood at that time, and other facts, as before stated."

The plaintiff excepted to all of these instructions, and assigns the giving of them as error. We think they place a proper construction upon the contract, and announce correct rules of law. The defendant might have been under obligation to sink the shaft to the lowest practicable depth, if he had been certain of finding the requisite vein of coal at that depth. But there is no rule of law which requires him to hazard his money to such an extent upon an uncertainty. All that the law requires is that he shall act in good faith, and

exercise reasonable diligence, and use reasonable exertions in view of all the surrounding circumstances to find the specified vein. The law cannot define absolutely the depth to which the defendant should go, nor the efforts which he should exert. These are questions of fact for the jury, to be determined under the general direction that the exertions must be reasonable in view of all the circumstances.

II. The plaintiff assigns as error the refusal of the court to give the following instruction: "If, at the time defendant abandoned the farther search for coal in said shaft, the geological indications were such as to show a coal miner of ordinary mining knowledge and experience, to a reasonable certainty, that the bottom of the drill hole was either in or near a four foot vein of merchantable coal, then defendant should have prospected farther, either by farther sinking the drill hole he was then in, or by sinking another, or by some other test by which he could have ascertained as to the coal with a reasonable certainty, unless you find that such a vein of coal does not lie under said shaft within a depth practical or profitable for working."

The facts mentioned in this instruction might very properly have been taken into consideration by the jury in determining whether the defendant acted in good faith, and prosecuted his work to a reasonable depth. But these facts do not justify the announcement of a rule of law that under such circumstances it was the duty of the defendant to prospect farther. Experience shows that as to the matter under consideration geological indications are often deceptive, and the opinions of experienced miners unreliable. Even in the present case the testimony shows that some of the experienced miners employed by the defendant were of the opinion that the vein in the White Breast shaft had been passed long before the depth of three hundred feet was reached, and they advised the defendant to resort to drilling long before he did so.

The view which we have taken as to the proper construc-

tion of the contract practically disposes of the case, and renders unncessary a separate consideration of the errors discussed. The judgment is

AFFIRMED.