[No. 977.]

HENRY C. TOOMBS, APPELLANT, v. THE CONSOLI-
DATED POE MINING COMPANY AND G. G.
BRIGGS, RESPONDENTS.

CONDITIONAL AGREEMENT—VENDOR'S LIEN.—In consideration of a settle-
ment for extra work done by plaintiff, and of a conveyance from him to
the Consolidated Poe Mining Company of his interest in a quartz mill,
the company agreed to pay him a certain sum of money out of the first
net proceeds of ores, from its mine, crushed and reduced at its mill; that
the amount should not be a debt otherwise collectible of the company,
until there were net profits, and then only to the extent thereof. There
were no net proceeds derived from the working of the mine: *Held*, that
plaintiff had no right of action for the money mentioned in the agree-
ment, or for the enforcement of a vendor's lien.

APPEAL from the District Court of the Second Judicial
District, Washoe County.

The facts are stated in the opinion.

*W. Webster and W. L. Knox*, for Appellant:

I. The laws of this state give a vendor of real estate a
lien on the property sold, for the purchase money, or any
part thereof, remaining unpaid after a conveyance has been
made to the vendee, and the lien is good against all persons
succeeding to the rights of the vendee, who had notice.
(*Sparks* v. *Hess*, 15 Cal. 186; *Chance* v. *McWhorter*, 26 Ga.
315; 14 Abb. 57, sec. 1197; 7 Ohio, 222; 14 Abb. 57, sec.
1203; *Truebody* v. *Jacobson*, 2 Cal. 286.)

II. A taking vendee's note, or an extension of time of
payment, is no waiver of the vendor's lien. (*Truebody* v.
*Jacobson*, 2 Cal. 286; 14 Abb. U. S. Dig., secs. 1100, 1106;
21 Cal. 173; 14 Ala. 169; 5 Id. 397; 1 Blackf. Ind. 416, 216;
3 Bibb, 183; 4 B. Mon. 131; 6 Id. 67, 74; 4 N. J. Eq. 251;
2 Bland, 626; 2 Johns. N. Y. Ch. 308; 21 Vt. 271; 14 Abb.
Dig. 57, sec. 1194; *Ott* v. *King*, 8 Gratt. 224; *Walker* v. *Sedg-
wick*, 8 Cal. 368; 2 Story Eq. Jur. 1220.)

III. In this case, there has been no express or other
waiver of plaintiff's lien on the property sold. So long as
the vendee was endeavoring in good faith to work its ores
and realize the means for payment of this balance due,

plaintiff could not enforce the payment of the debt; but when it abandoned its efforts to that end, and suffered the property to go out of its control, then the plaintiff, under the contract of sale, might resort to the remedy of enforcing his vendor's lien.   (2 Parsons Cont. 666, 675, 677; *Wilhelm* v. *Fimple,* 31 Iowa, 131; *Short* v. *Stone,* 8 Q. B. 358; *Elderton* v. *Emmens,* 6 C. B. 160.)

IV.  A sub-vendee, with notice, takes the estate *cum onere.* (*Parker* v. *Foy,* 43 Miss. 260.)

The contract of waiver must be inconsistent with the existence of the lien.   (2 Story Eq. Jur., secs. 1225, 1226, note.)

V.  The doctrine of equity is, that a vendor of real estate, either selling, or both selling and conveying the property without receiving payment of the purchase money, retains a lien upon it as security for such purchase money, or so much of it as remains unpaid. · (*Farrar* v. *Winterton,* 5 Beav. 1; *Burns* v. *Taylor,* 23 Ala. 255; 2 Story Eq., secs. 1216, 1218, 1220; *Briscoe* v. *Bronaugh,* 1 Tex. 326; 1 Hilliard on Mort. 622, sec. 16.)

VI.  The law presumes an intention to retain a lien, and imposes upon the vendee the burden of proving the contrary.   (*Teed* v. *Carruthers,* 2 Y. & Coll. (Ch. 31.)

If the purchaser might learn the existence of the lien by examining the first vendee's deed, he is chargeable with notice of such lien.   (*Manly* v. *Slason,* 21 Vt. 271; *Honore* v. *Bakewell,* 6 B. Mon. 67; 1 Hilliard on Mort., secs. 31, 32.)

*C. S. Varian,* for Respondent Briggs:

I.  The "settlement" is the mutual agreement of the parties that two thousand five hundred and seventy-five dollars is due for extra work on their joint property; that the defendant's company will pay it to plaintiff in a certain way and out of certain funds, contemplated and designated by both of the parties, without fraud, and with full and equal knowledge of all the facts and circumstances.

In no sense can this settlement be said to fix the designated sum as a part of the purchase price.   (*Patterson* v. *Edwards,* 29 Miss. 67.)

II. The plaintiff expressly waived any claim upon the property by designating a fund. This stipulation was an act manifesting his intention to discharge the land. (2 Washburn R. P. 90 *et seq.;* Walker's Am. L. 315; *Clark* v. *Hunt*, 3 J. J. Marsh, 554; *Blackburn* v. *Gregson*, 1 Bro. C. C. 424; *Phillips* v. *Saunderson*, 1 S. & M. (Ch.) 462; 2 Crabbe Real Prop. 853; Coote Mort. 219; 2 Hilliard on Mort. 696; *Selby* v. *Stanley*, 4 Minn. 65; *Daughaday* v. *Paine*, 6 Id. 450.)

III. The creditor, or subsequent purchaser, must have notice that a secret trust can not be enforced against him. (*Bayley* v. *Greenleaf*, 7 Wheat. 46.)

To operate as a notice, the conveyance must have been recorded. (1 Comp. L. 252, 253.) Where notice is claimed through the deed, by its recital of unpaid purchase money, the burden of proof is on the party asserting lien, consequently it must be alleged. (Hilliard on Mort. 684; *McAlpine* v. *Burnett*, 23 Tex. 649; *Peru Bridge Co.* v. *Hendricks*, 18 Ind. 11.)

By the Court, LEONARD, J. :

This is a suit to enforce a vendor's lien upon a certain quartz mill and mill-site. The Poe Company, a corporation, and defendant, Briggs, demurred separately to the complaint. Both demurrers were sustained, and as to defendant, Briggs, the suit was dismissed. Plaintiff was granted leave to amend his complaint as to the Poe Company, but refusing to do so, the suit was dismissed as to that company also. If we mistake not, a consideration of one of the many points made will prove decisive of the appeal. From the complaint we gather the following facts:

On the sixth day of August, 1873, the owners of the Consolidated Poe Mining Company, then unincorporated, entered into a written contract with plaintiff, whereby it was agreed that the latter should build a quartz mill, at an estimated cost of ten thousand dollars, for the purpose of working the ores of the company's mines, the mill, when completed, to be the property of plaintiff and the members of the Poe Company. Subsequently, the Consolidated

Poe Mining Company was incorporated under the same name, with plaintiff's consent. Plaintiff built the mill, and, after the incorporation, it was accepted by the proper officers of the company. Plaintiff was paid the estimated cost, and by an instrument, under seal, called therein a "deed and act of settlement between the parties," it was agreed, on the third day of December, 1873, that the mill had cost five thousand dollars more than the original estimate, and, in satisfaction of that amount, the following stipulation was inserted in, and made a part of, the conveyance from plaintiff to the Poe Company, to wit:

"Said first party (Poe Company) hereby agrees and covenants that out of the first proceeds of crushing and reducing ores of gold and silver in said mill, from its said mine, after the payment of the expenses of working its said mill and mine, it will pay to the second party (plaintiff), his heirs or assigns, the sum of two thousand five hundred and seventy-five dollars, in United States gold coin, with interest thereon until the payment of such interest and principal of the note of —— per centum per month from date of these presents; but such sum of two thousand five hundred and seventy-five dollars shall not be a debt otherwise collectible of the first party, until the proceeds of its mill and mine, over expenses, will pay such sum and interest, or part thereof, and then only to the extent of such part over such expenses. In consideration of the foregoing covenants of the first party, and the covenants of the second party, in said written instrument, and the settlement herein made and contemplated, the second party hereby bargains, sells, grants, and conveys unto the first party all the right, title, interest, and estate to said stamp quartz mill and all the machinery thereof," etc. Then follows a conveyance of plaintiff's right of possession and occupation in and to the lands occupied by the parties for milling and mining purposes.

Thus it appears that so far as the extras are concerned (and this suit is to enforce a vendor's lien for them only), the consideration of the conveyance was the settlement stated; that is to say, it was the agreement on the part of

the Poe Company to pay plaintiff the sum of two thousand five hundred and seventy-five dollars out of the first net proceeds of ores from its mine, crushed and reduced at its mill; and, on the part of the plaintiff, that said sum should not be a debt otherwise collectible of the Poe Company, until there were net profits, and then only to the extent thereof. The company agreed to pay, and the plaintiff to receive, the amount agreed upon, out of the net proceeds, and not otherwise. If there should be no such proceeds, nothing was to be due or payable; and, outside of the original estimate, the ten thousand dollars which were paid, that agreement and the rights given thereby, formed the consideration of the conveyance. Plaintiff took his chances upon the net proceeds, and the company made itself liable in a certain event only.

It is admitted that there have been no proceeds after payment of the expenses; and, more than that, it appears that the proceeds have fallen far short of paying the actual expenses.

Such being the case, it is plain that there is nothing due or payable from the company to plaintiff, unless there are facts alleged which relieve plaintiff from the consequences of his agreement, and enable him to pursue the remedy now sought, as he might have done, if the transaction had been an ordinary sale and purchase without payment of the purchase money.

We express no opinion as to what plaintiff's rights or remedies would have been, if the inability to pay from the net proceeds had been caused by the fault of the company, because that is not alleged or claimed. It was the duty of the company, under the covenants stated in the deed, to work the mine, and by proper means extract the gold and silver from the ores. It is alleged that both parties fully believed the sum of two thousand five hundred and seventy-five dollars and interest, besides working expenses, would be realized from the ores, but that they proved very base and refractory, and that both plaintiff and the company were deceived; that, contrary to the expectations of both parties, the ores were more refractory and base than any

others on the Pacific coast; that the company, after expending large sums of money in tests and experiments, and in building furnaces and other appliances for the reduction of said ores, from December, 1873, to and including the summer of 1876, abandoned further efforts to work its ores and mines; that the company not only expended large sums of money in working the mine and reducing the ores, but that, in time, it became largely indebted for supplies, labor, and money, expended in its business of mining and working ores; to secure which it mortgaged its mines, and the mill and mill-site in question, for about five thousand dollars; that being unable to pay said mortgage indebtedness or any part thereof, it suffered a sale of its entire property under an order and decree of a competent court, on the seventh day of March, 1878, at the suit of defendant, Briggs, for the sum of eight thousand and nine dollars; that the company is hopelessly insolvent, being largely indebted to other persons; that for the purpose of complying with his covenants, plaintiff has waited until all reasonable assurance of receiving payment in the manner agreed, and from the sources stipulated, has ceased, and until the company, by its own acts and inability to pay, has been deprived of its means of complying with its covenants to pay plaintiff from the profits and proceeds of its mine and mill.

The above are all the facts stated, from which it is, or can be, claimed that plaintiff has a right of action either for money due, or for the enforcement of a vendor's lien. If, under the contract, plaintiff has no right of action to recover a money judgment, it follows, of course, that he can not maintain this suit to enforce the lien claimed. The existence of a debt due as purchase money, is a condition precedent to a right of action to enforce the lien.

It is not alleged, nor does it anywhere appear, that the Poe Company failed to do anything which it should have done, or did anything which it ought not to have done under its contract. There is no allegation of fraudulent acts, or even of errors in judgment. It worked its mine, and reduced its ores, as it agreed to do. In so acting, debts were contracted which it was unable to pay, and the result

was a forced sale of its property. Nothing appears which indicates aught but an honest desire and a long-continued effort on its part to carry out its contract. The property was sold as stated, but no fault is ascribed to the company in being unable to avert that disaster.

It is alleged that, after working the mine and running the mill some three years, further efforts were abandoned; but it is not charged that the company, under the circumstances, ought to have continued its work, or that it could have done so with profit.

Under the contract, the only condition that could make the claim upon which this suit is based an enforceable debt does not exist, and no facts are stated which relieve the plaintiff of the necessity of showing the existence of that condition, in order to maintain his suit against either defendant.

The complaint does not state a cause of action, and the judgment appealed from is affirmed.