[Filed March 29, 1887.]

# H. D. RAY ET AL., RESPONDENTS, v. ELIZABETH N. HODGE, APPELLANT.

ESTATE OF DECEDENTS.—An action may be maintained against the estate of a deceased person, without presentation to the County Court, for allowance under the Act of 1885, section 1134, Hill's Code.

LEASE—DUTY OF LESSEE.—Hodge, deceased, bought an interest in a lease of a mine for consideration expressed as follows: "$750 cash, $1,250 when 250 flasks of quicksilver produced, to each of the first parties." The lease provided that a certain amount of work should be done upon the mine during a certain time. Upon the following findings of the court below, "(1) The mine could not be operated at a profit, nor would, by any reasonable outlay, have produced 250 flasks of quicksilver." "(2) Two hundred and fifty flasks could have been produced had the mine been worked according to the terms of the lease within the specified time." *Held*, (1) That it was inferable that H., in connection with the co-lessees, had undertaken to work the mine. (2) That if H. ceased work (in connection with the co-lessees) when the same, if worked in the ordinary mode, would have justified its developments, the deferred payment would have become matured. (3) That no valid judgment could be rendered against H. without a finding that H. failed to make reasonable efforts to operate the mine in view of the expense attending the same. (4) That the contract did not compel the working of the mine after it appeared that it was profitless.

APPEAL from the judgment of the Circuit Court for the county of Multnomah. Reversed.

The appellant demurred to the complaint upon the ground that the claim upon which the action was founded had not been presented to the County Court for allowance, after it had been disallowed by the executrix, before this action was brought.

The overruling of this demurrer was one ground insisted on by the appellant.

The other facts are stated in the opinion.

*Gearin & Gilbert,* for-Appellant.

1. The claim should have been presented to the County Court, as required by statute of 1885, page 44, and until this has been done cannot be sued on.

· 2. Hodge was not bound to go on with the work after W. and N., his co-lessees, had abandoned it; nor was he bound to manufacture 250 flasks of quicksilver at a loss; that was not contemplated or provided for in the lease. (*Skidmore* v. *Eiken-berg,* 53 Iowa, 621; *Burger* v. *Peterson,* 78 Ill. 633; *Lorillard* v. *Silver,* 36 N. Y. 578; *Pinch* v. *Anthony,* 10 Allen, 470; *Reed* v. *Gordon,* 26 Kan. 500; *Oliphant* v. *Woodburn C. & M. Co.* 63 Iowa, 332.)

*W. R. Willis, C. Ball,* and *Watson, Hume & Watson,* for Respondents.

1. The right to bring the action was perfect before the Act of 1885 became a law, and is not retroactive. (Potter's Dwarris, 163; *Wood* v. *Oakley,* 11 Pa. 400; *Savings Bank* v. *Town of Seneca Falls,* 86 N. Y. 317; *Trist* v. *Cabenas,* 18 Abb. Pr. 143.)

2. The act simply gives a cumulative remedy. (Potter's Dwarris, 156; *Crittenden* v. *Wilson,* 5 Cowen, 165; *Gooch* v. *Stephenson,* 13 Me. 371.)

3. The act is unconstitutional. (Wells on Jurisdiction of

Courts, § 280; *Disosaway* v. *Bank*, 24 Barb. 63; *Andrews* v. *Wallace*, 29 Barb. 350; Comp. Laws, 1854, p. 329; *Adams* v. *Lewis*, 5 Sawy. 229.)

4. When appellant abandoned the mine, when, by carrying on the work in the stipulated manner 250 flasks of quicksilver could have been produced, the unpaid purchase price became due. The cost of the work is immaterial. (2 Chitty on Contracts, 1067; *Lamoreaux* v. *Rolfe*, 36 N. H. 33; *Miller* v. *Whittier*, 32 Me. 203; *Newcomb* v. *Brackett*, 16 Mass. 161; *Thurston* v. *Franklin College*, 16 Pa. St. 154.)

THAYER, J.—The respondents commenced an action in said Circuit Court to recover the sum of two thousand five hundred dollars which they alleged to be due from the appellant, as executrix of the estate of Charles Hodge, deceased, and which allegation was controverted by the appellant. The case was tried before the Circuit Court without a jury, and judgment given in favor of the respondents for said sum. The only questions in the case that need be considered are the rights and liabilities of the parties under an agreement of assignment of a half interest in a lease, made by the respondents to said Charles Hodge in his lifetime, and the sufficiency of the findings of the Circuit Court to sustain the judgment given thereon. Some other questions were raised by the appellant's counsel, but the court regards them as untenable. The agreement of assignment is as follows:—

"Mem. of agreement made between Reuben Doty and J. H. Ray of the first part, and Charles Hodge of the second part, witnesseth, that the parties of the first part, in consideration of one dollar U. S. gold coin to them paid, and for the considerations hereinafter mentioned, have agreed and do hereby agree to transfer, assign, and make over unto the party of the second part, one-half interest in a certain lease and agreement made between the Bonanza Gold and Quicksilver Mining Company and John Winterburn and Imes J. Napier, dated October 1, 1881. The consideration noted in the margin to be paid by the said second party to the said first parties.

" Dated at Calipooia, Douglas Co., Or., this twenty-ninth day of September, 1881.

"J. H. RAY,<br>
"REUBEN DOTY,<br>
"CHAS. HODGE,<br>
"By JOHN WINTERBURN.

" (Note in margin.)   $750 cash, $1,250 when 250 flasks of quicksilver produced, to each of the first parties."

There is no claim but that the respondents carried out their part of the agreement by causing an assignment to be made of the one-half interest in the said lease.   The transfer to Hodge, however, was made upon the express condition that the engineering and management of all the operations at the mine should be and remain in the hands of the orginal lessees, Winterburn and Napier.   The lease referred to in the agreement of assignment was a five years' lease of the mine.   It required the lessees to keep two men constantly employed, and provided for the forfeiture of the lease (at the option of the company) on failure of the lessees to do so.   The lessees were to pay the company as rent one tenth of the gross product of the mine; and it was further provided in the lease that whenever, in the judgment of the lessees therein named, five hundred tons of ore of a sufficient value to justify reduction should be extracted from the mine, that they should have the same reduced at the works of the New Idrian Mining Company, or immediately begin work for the construction of a furnace for that purpose.   The agreement between the respondents and Hodge imposed no express obligation upon the latter to work the mine, though I think it fairly inferable therefrom that it was understood between the parties to it that he would, in connection with the said Winterburn and Napier, work it, and that the terms of the lease would be observed.   Hodge agreed to make the deferred payment to the respondents when 250 flasks of quicksilver had been produced, and if he, or his representative, refused to go on with the work when there was a reasonable probability that the mine, if worked in the ordinary mode and process in which such affairs are carried on, would have produced quicksilver in such quantities as to justify its development, said pay-

ment would have matured. It may also be inferred from the transaction that the parties understood at the time that the mine would, if worked with reasonable diligence and care, produce an amount of quicksilver that would justify the outlay. But the court is unable to agree with the respondents' counsel, that Hodge obligated himself by taking the assignment of the half interest in the lease, to extract from the mine 250 flasks of quicksilver. He did not agree to prosecute the work longer than it could successfully be operated. The tacit understanding that the mine would prove a success was a part of the implied understanding that he would work it. The undertaking was evidently an experiment. Hodge was willing to pay the respondents $1,500 cash, and $2,500 more when the 250 flasks of quicksilver were produced; but he did not agree expressly or by implication that he would produce that quantity of quicksilver, or prosecute the enterprise any longer than a prudent man would be justified in continuing it. If the mine proved a failure, what object would there be in keeping the two men employed upon it during the entire term of the lease? There is no covenant that he should do that; nor any obligation to do it if its development failed to meet the reasonable expectation of the parties. The stopping the work did not give the respondents any right to claim the two-thousand-five-hundred-dollar payment, unless it was an unjustifiable quitting, as viewed from a prudent business standpoint. The issue between the parties was simply this: The respondent said that the deferred payment was due, not because the required amount of quicksilver had been produced which matured it by the terms of the agreement, but for the reason that the appellant had neglected a duty which she, as executrix of Charles Hodge, owed to them in regard to the prosecution of the mining enterprise. That was the issue that the Circuit Court was called upon to determine. We have already indicated what duty Charles Hodge was under to the respondents. Their counsel claim that the appellant abandoned the work in May, 1883, and that if she had properly conducted it, she could and would have produced 250 flasks of quicksilver prior to that time. The court found against the respondents upon this allegation: Found

"that the mine could not be operated at a profit; nor could it, by any reasonable outlay of money and labor, have produced 250 flasks of quicksilver by the thirteenth day of May, 1883." The court did, however, find "that 250 flasks of quicksilver could have been taken out of said mine within the term of said lease, had the same been worked and operated in the manner provided in said lease." I do not see that this last finding aids the respondents' case in the least. The appellant could only operate the mine in conjunction with Winterburn and Napier. They owned the same interest in the lease she did, and had charge of the engineering and management of the work, and she alleges in her answer that the mine could not be worked to any profit, and was abandoned after it had been proven by the lessees that the ore did not pay the cost of reducing it. No valid judgment could be rendered in the action without a finding that the appellant failed to make reasonable efforts to operate the mine, in view of the outlay attending it, and the prospects obtained in its development. To require the appellant to impoverish the estate of which she was the representative in order to extract 250 flasks of quicksilver would be absurd. There was no implied promise arising out of the transaction to that effect. The following authorities sustain this view: *Toombs* v. *C. Poe M. Co.* 15 Nev. 444; *Reed* v. *Golden,* 26 Kan. 500; *Pinch* v. *Antony,* 10 Allen, 470; *Skidmore* v. *Eikenberry,* 53 Iowa, 621; *Berger* v. *Paterson,* 78 Ill. 633; *Oliphant* v. *The Woodburn Coal & Mining Co.* 63 Iowa, 332. This last case was an action upon a written contract to pay money when the defendant should succeed in sinking a shaft on its leased lands and develop a paying vein of coal. The plaintiff relied, as in the case at bar, upon an implied obligation to sink the shaft. The court said (p. 336): "As to the implied obligation upon which the plaintiff relies, we have to say that, if there was any, we do not think that the company, if it had sufficient money, was bound to sink a shaft regardless of expense and in the absence of any prospect of coal. . . . . We do not think that any such promise was raised by mere implication of law; nor do we think that there was an implied promise to use what might seem to others to be reason-

able efforts." In *Lorillard* v. *Silver*, 36 N. Y. 577, in an action upon a written promise to pay the plaintiff five hundred dollars in consideration of land the defendant had purchased from him, over and above the amount he had agreed to pay him therefor, in case he realized three thousand five hundred dollars for it, or any other sum between three thousand and three thousand five hundred dollars, that he might sell it for. It was held by the court of appeals, although it appeared in evidence that the defendant purchased the land upon speculation for the purpose of selling again, that the defendant was not bound to sell the land, although he received an offer of four thousand five hundred dollars for it. Hunt, J., in delivering the opinion of the court, said (p. 580): "The exclusive right to dispose of the property was left with the defendant, and it was a necessary result that he was justified in acting with reference to his own interest in accepting or rejecting an offer for the property. I think it was in contemplation of the parties that the defendant was to act upon this principle, and that if it should result, while so acting, that a certain rate of profit should be made, then the plaintiff's right should attach to the additional five hundred dollars. His rights were subordinate to, and dependent upon the result of the defendant's disposition of the property." This authority goes further than I am inclined to hold in this case, though it is difficult to discover any material difference in principle between the two cases. To hold that there must be a finding that the appellant neglected to operate the mine, when it could have been worked consistently with her interest, before a recovery against her can be had, is within the general line of the authorities and the rules of common sense; and as there is no such finding, and the evidence contained in the bill of exceptions will not justify any such finding, the judgment appealed from must be reversed, and the case remanded to the Circuit Court, with directions to enter a judgment upon the findings in favor of the appellant.