PRITCHARD v. McLEOD et al.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1913.)

No. 2,206.

1. MINES AND MINERALS (§ 55*)—MINING CLAIMS—SALE—CONSTRUCTION.
    Where a contract for the sale of certain mining claims provided that plaintiff agreed to sell and defendants agreed to buy the claims in controversy, and that the intent of the agreement was that the plaintiff sold to defendants all his real and personal property, etc., for a specified sum, $1,000 of which was paid in cash, $2,500 evidenced by two notes, and the balance from the proceeds of the claims to be derived from subsequent workings, the contract was an absolute contract of sale, and not a mere option.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–165; Dec. Dig. § 55.*]

2. MINES AND MINERALS (§ 55*)—MINING CLAIMS—CONTRACT TO PURCHASE—PURCHASE PRICE—CONDITIONAL LIABILITY.
    Where the balance of the purchase price of certain mining claims was payable only out of the gross output of the claims, defendant could not escape performance by willfully neglecting to work the claims and produce the fund from which the payments were to be made, though there was no clause in the agreement binding him to do so.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–165; Dec. Dig. § 55.*]

3. MINES AND MINERALS (§ 55*)—SALE—INTENT—PLEADING.
    Where a contract for the sale of certain mining claims was uncertain as to whether the purchaser's obligation to pay the balance of the price was conditional or unconditional, it was proper in an action thereon for the seller to plead its intent and meaning as he construed it, by alleging that the balance was to be paid within a reasonable time, which had elapsed.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–165; Dec. Dig. § 55.*]

4. MINES AND MINERALS (§ 55*)—SALE—BALANCE OF PRICE—PAYMENT—CREATION OF FUND.
    Where a contract for the sale of mining claims provided that the purchaser should pay a balance of the price only by application of 25 per

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cent. of the gross output of the claims, it was his duty to use reasonable diligence to create the fund by working the mines, and his failure to do so for more than four years was sufficient to raise a rebuttable presumption of breach.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–165; Dec. Dig. § 55.*]

5. MINES AND MINERALS (§ 55*)—SALE—BALANCE OF PRICE—PAYMENT FROM PROCEEDS—DEFENSES.

Where a contract for the sale of mining claims provided that a balance of the price should be paid out of the proceeds of the mines, it would be presumed that the claims contained mineral; and the burden was on the defendants to rebut such presumption, and show that they were barren in defense, if such was the fact.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 153–165; Dec. Dig. § 55.*]

Appeal from the District Court of the United States for the Second Division of the District of Alaska; Thomas R. Lyons, Judge.

Action by Alfred J. Pritchard against George K. McLeod and others. The plaintiff, as vendor, seeks to compel the defendant McLeod, the vendee, to pay the stipulated purchase price of certain mining claims situate in Alaska. From a judgment sustaining a general demurrer and dismissing the suit, plaintiff appeals. Reversed.

The contract upon which the action is based is as follows:

"Memorandum of agreement made and entered into this seventh (7th) day of April, nineteen hundred and eight (1908), between Alfred J. Pritchard, of Seattle, Wash., the party of the first part, and George K. McLeod, 31 Nassan street, New York, the party of the second part:

"Whereas, the party of the first part agrees to sell and the party of the second part agrees to buy all the placer mining claims (with the exception of one certain claim in the vicinity of Dearborn Discovery on the Inmachuk), also warehouses, houses, stables, china, and centrifugal pumps, boilers, engines, one horse, scows, tents, forges, stoves, hoes, belts, machinery, and tools of every description, camp outfit of every description, and lots and water rights owned by said party of the first part in the Fairhaven mining district, district of Alaska, for the sum of thirty thousand dollars ($30,000.00) upon the following terms and conditions:

"1. One thousand dollars ($1,000) down, the receipt whereof is hereby acknowledged.

"2. One thousand five hundred dollars ($1,500) note due and payable on November 6, 1908.

"3. Two thousand five hundred dollars ($2,500) note due and payable April 6, 1909.

"4. Twenty-five (25) per cent. of the gross output of gold taken from any of the claims or fractions of claims sold by the party of the first part to the aforesaid party of the second part to be paid over upon demand to said party of the first part until the sum of twenty-five thousand dollars ($25,000) is paid in full.

"5. That the party of the first part upon his return to Seattle will execute quitclaim deeds, subject to the conditions of this agreement, in favor of said party of the second part to cover aforesaid mentioned placer mining claims, lots, water rights, and bill of sale of all personal property above outlined.

"6. The proceeds of any articles of camp equipment that have been sold by the agent of the party of the first part previous to the date of this agreement to belong to the party of the first part.

"7. The proceeds of any articles that may be sold after the date of this agreement to belong to the party of the second part.

"8. That the party of the second part will allow H. I. Dearborn the use of horse to clean up his winter dump.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"9. That the party of the first part will execute an order to his agent to turn over everything to the party of the second part.

"10. The intent and purpose of this agreement is that the party of ·the first part sells to party of the second part all his real and personal property, of whatsoever nature, kind, or description, now owned by party of the first part in the said Fairhaven mining district, district of Alaska, and said party of the first part undertakes to execute all necessary deeds and transfers when called upon to do so, with the sole exception of one placer mining claim near Dearborn's Discovery (so-called) on the lower Inmachuk river.

"Signed and sealed and delivered the day and year first above written.

"[Signed]    Alfred J. Pritchard.    [Seal.]

"George K. McLeod.    [Seal.]"

"The plaintiff attaches a copy of the contract to the complaint, and alleges that the two notes therein called for were executed and delivered to him, and that he is still the holder thereof; that no part of the notes has been paid, and that, with the exception of the $1,000 paid at the time of the execution of the instrument, no payments have ever been made; that he, the plaintiff, has performed, and is ready and willing to perform, the agreement; "that it was understood and agreed that the said $25,000 (named in the contract) should be paid within a reasonable time; that more than a reasonable time has elapsed since the making of said agreement; that the defendant George K. McLeod has neglected to mine said premises, or to extract gold therefrom, whereby and on account of which all of said moneys are now due and payable"; and that, although plaintiff has tendered a deed, defendant fails and refuses to pay the purchase price, or any part thereof.

William H. Gorham, of Seattle, Wash., and G. J. Lomen, of Nome, Alaska, for appellant.

Ira D. Orton, of Seattle, Wash., for appellees.

Before GILBERT, Circuit Judge, and WOLVERTON and DIETRICH, District Judges.

DIETRICH, District Judge (after stating the facts as above).    [1] The view that the agreement is a mere option is untenable.    The "party of the first part agrees to sell and the party of the second part agrees to buy.    * * *    The intent and purpose of this agreement is that the party of the first part sells to the party of the second part all his real and personal property," etc.    So reads the instrument.    The obligation of McLeod to pay the items of $1,500 and $2,500 (evidenced by two promissory notes), upon November 6, 1908, and April 6, 1909, respectively, is absolute, and wholly independent of any contingency whatsoever.

[2] The question whether or not the remaining $25,000 is payable conditionally or unconditionally is not so clear, and perhaps should be finally answered only in the light of all the circumstances surrounding the execution of the agreement.    Nash v. Towne, 5 Wall. 689, 18 L. Ed. 527; Canal Co. v. Hill, 15 Wall. 94, 21 L. Ed. 64; Merriam v. United States, 107 U. S. 437, 2 Sup. Ct. 536, 27 L. Ed. 531. The most favorable view to the defendant is that this balance was understood to be payable only out of a specified fund, namely, the gross output of the claims, and that the defendant's obligation was therefore, to a degree, made contingent upon the coming into existence of such a fund.    But whether such was the intent of the provision, or whether the only purpose thereof was to furnish a measure of security to the vendor, need not now be decided, for in either view the complaint states a cause of action.    It is elementary that where

payment is to be made out of a specific fund, which it is the duty of the obligated party to create, or where the time of payment is dependent upon a condition subject to his control, he cannot escape performance by willfully neglecting to discharge his duty. In Nunez v. Dautel, 86 U. S. (19 Wall.) 560, 22 L. Ed. 161, where the contract provides for payment out of the proceeds of a crop or money raised from some other source, the court said:

"No time having been specified within which the crop should be sold or the money raised otherwise, the law annexed as an incident that one or the other should be done within reasonable time, and that the sum admitted to be due should be paid accordingly. Payment was not conditional to the extent of depending wholly and finally upon the alternatives mentioned. The stipulations secured to the defendants a reasonable amount of time within which to procure in one mode or the other the means necessary to meet the liability. Upon the occurrence of either of the events named, or the lapse of such time, the debt became due. It could not have been the intention of the parties that if the crop were destroyed, or from any other cause could never be sold, and the defendants could not procure the money from any other source, the debt should never be paid. Such a result would be a mockery of justice."

See, also, Smithers v. Junker (C. C.) 41 Fed. 101, 7 L. R. A. 264; Johnston v. Schenck, 15 Utah, 490, 50 Pac. 921; Hood v. Hampton Plains, etc., Co. (C. C.) 106 Fed. 408; Page v. Cook, 164 Mass. 116, 41 N. E. 115, 28 L. R. A. 759, 49 Am. St. Rep. 449; Toombs v. Consolidated M. Co., 15 Nev. 444; Ray v. Hodge, 15 Or. 20, 13 Pac. 599; Skidmore v. Eikenberry, 53 Iowa, 621, 6 N. W. 10.

It is said that there is no clause in the agreement binding the purchaser to mine the property; but such an obligation is implied. He agreed to buy the property for the stipulated price of $30,000. That $25,000 of the amount was to be paid out of the proceeds arising from operating the property does not alter the fact that he received the entire consideration for the $30,000. In the defendant's view, it would necessarily be the case that he could, without paying any consideration, maintain possession of the property indefinitely, and hold it subject to the operation of the contract without limit of time; for such are his rights so long as the contract remains in force, and by hypothesis there could be no breach thereof by the defendant so long as he fails to operate the property and produce a gross output. He could even go further: Under the last clause of the agreement he has the right to demand deeds of conveyance, and therefore, if his theory is correct, he may not only remain in possession, but he may acquire the absolute title, without paying any consideration. Imperative, indeed, must be the letter of an agreement to justify an interpretation fraught with such results. If in the light of the condition of the parties, and the circumstances surrounding the execution of the instrument, the obligation to operate the property ought not to be implied, the defendant may show the facts at the trial; but upon the face of the instrument effect must be given to such implication.

For any one of three reasons, therefore, it must be held that a cause of action is stated:

(1) The obligation to pay the $4,000 evidenced by the two notes, being absolute and long since matured, is a sufficient basis for recovery.

[3] (2) The written instrument sued upon being uncertain touching the question whether the obligation to pay the $25,000 is conditional or unconditional, it was proper for the plaintiff to plead its intent and meaning as he construes it. This he has done by alleging that this amount was to be paid within a reasonable time, and that such time has elapsed. If these averments, which serve as the basis of parol evidence, not to contradict, but to give certainty to, the terms of the instrument, are true, the entire obligation is both absolute and presently payable; and upon demurrer they must be assumed to be true.

[4] (3) If we construe the agreement as imposing an obligation upon the defendant to pay the $25,000 only by the application of 25 per cent. of the gross output of the mining claims, then it was his duty to use reasonable diligence to create such a fund. 2. Page on Contracts, § 1154; 9 Cyc. 611. More than four years elapsed after the execution of the agreement before this action was commenced, and it appears that during all that time he wholly failed to mine the premises, or to extract gold therefrom. Even if the averment that an unreasonable time has elapsed were disregarded, the length of the period is sufficient to raise a rebuttable presumption to that effect. Nunez v. Dautel, supra.

[5] From the fact that the parties agreed upon this source of payment, it must also be presumed that the claims contain gold, and if such is not the fact the burden is upon the defendant to overcome such presumption, and to establish as a matter of defense that they are barren.

It follows that the judgment sustaining the demurrer and dismissing the suit was erroneous, and it will therefore be reversed, and the cause remanded for further proceedings.