### MADDOCKS et al. v. ZIMMERMAN.

(Fourth Division. Fairbanks. April 23, 1920.)

No. 2447.

**1. Liens ⚙══3—Contracts—Mines and Minerals.**

Plaintiffs were in possession of certain mining claims as lessees. They made certain disbursements in connection with the work and improvements thereon, but defaulted and their lease was declared forfeited. To aid the plaintiffs to recover their losses the defendant, a co-owner of one-half of the property, entered into a contract with them, whereby, in consideration of their surrender of their possession, she agreed to allow them the sum of $14,500 out of the royalties to be secured from

⚙══See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a new lease to one Drury. To secure the prompt delivery of their share of the royalties the defendant Zimmerman provided in the contract that the plaintiffs should have a lien upon her interest in the mining claims. The new lease to Drury did not pay the plaintiffs; the defendant made no effort to do so. *Held*, the plaintiffs had a specific lien on the defendant's interest in the mining claims for the payment of the sum due them, and the court signed a decree of foreclosure.

**2. Contracts ⬉314—Frauds Making Performance Impossible.**

Where plaintiffs surrendered their possession of mining claims upon consideration of an agreement by a co-owner of a half interest therein to pay them the sum of $14,500, for former development thereon, out of royalties to be obtained from subsequent lessees, and gave plaintiffs a specific lien on her half interest in the property as additional security for the payment of the amount, such owner cannot escape performance by willfully neglecting to lease the claims so as to produce the fund from which the payments were to be made, though there was no clause in the agreement binding her to do so.

By this action the plaintiff seeks to foreclose a lien in the sum of $14,500 upon an undivided one-half interest in the Rainbow quartz mining claim, located on Skoogy Gulch, Fairbanks recording precinct, territory of Alaska, and upon an undivided one-half interest in certain personal property, of an alleged value of more than $4,000, situate upon said claim, which for some time prior to June 17, 1914, had been used in connection with mining operations upon the Rainbow claim. The defendant is the owner of the real and personal property above described. E. W. Herchberger and Jack Nirich are equal owners of the other undivided one-half interest in the Rainbow claim. The title to this interest stands in the name of Herchberger. The plaintiffs, since the filing of the complaint herein, have acquired the ownership of the other undivided one-half interest in the above described personal property. In the year 1911 the plaintiff Roth, by verbal contract with the defendant, became the purchaser of an undivided one-eighth interest in the Rainbow claim, and with his associates entered into possession of the property and conducted mining operations thereon. The purchase price for the undivided one-eighth interest was $6,250 on account of which the plaintiff Roth prior to June 17, 1914, had paid the sum of $1,000. The mining operations not proving a financial success the plaintiff Roth was instrumental in effecting an agreement between the plain-

⬉See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tiff Maddocks and the defendant, whereby the defendant on August 5, 1912, gave the plaintiff Maddocks an option and lease upon her remaining undivided three-eighths interest. There was a cash payment of $3,000, and under the terms of the agreement further payments were to be made to the amount of $15,750. The plaintiffs thereupon proceeded to mine the Rainbow claim until the plaintiff Maddocks, being in default in the payments to be made by her, a modification of the option and lease of August 5, 1912, was entered into on June 14, 1913, by the plaintiff Maddocks and the defendant. The plaintiff Maddocks having defaulted in the payments to be made by her under the modification of June 14, 1913, the defendant elected to and did declare a forfeiture as to the plaintiff Maddocks under the provisions of the option and lease and modification thereof.

In this case, as in most unsuccessful mining ventures, the plaintiffs found too little gold. The evidence shows that the representations as to values made to the plaintiffs by the husband of the defendant, who acted as her agent and attorney in fact, were not confirmed by the results obtained by milling the ore extracted. The defendant claimed mismanagement on the part of the plaintiffs. The evidence further shows that the defendant and her agent were intensely opposed to the husband of the plaintiff Maddocks who was acting in a general way for the plaintiffs in the mining operations on the Rainbow claim and that with them the paramount object amounting almost to an obsession was to get the husband of the plaintiff Maddocks off the property. There is evidence to show that the defendant had confidence in the property and believed that under a different management it could be operated successfully. The plaintiff Roth, however, refused to give up possession. The evidence also shows that the defendant expressed a desire to see the plaintiffs reimbursed from the future operations of the property in such amounts as they had expended on purchase price, installation of machinery and equipment, and development work. Under such conditions, on June 17, 1914, they entered into the following contract:

"This agreement, made and entered into between A. M. Zimmerman, party of the first part, and Lurisse T. Maddocks and R. F. Roth, parties of the second part, witnesseth that—

"Whereas, E. W. Herchberger and A. M. Zimmerman are equal owners of the Rainbow quartz mining claim, situate between Skoogy

Gulch and Twin creek, tributary of Pedro creek, in Fairbanks recording district, Alaska, and have given to L. M. Drury a lease upon and option to purchase said mining claim.;

"And whereas, said parties of the second part are in possession ·of said claim and have made improvements thereon and disbursements in connection therewith aggregating fourteen thousand five hundred dollars, which amount the said Zimmerman is willing shall be refunded to them, without, however, incurring any personal liability upon her part to pay said sum or any part thereof;

"Now, therefore, in consideration thereof and of their surrender of possession of said property by July 1, 1914, the said Zimmerman agrees that she will deliver to the parties of the second part all royalties accruing under said lease and paid by said lessee until the amount so delivered shall aggregate $3,333.33; that thereafter all the royalties accruing under said lease and paid by said lessee shall be retained by her until they amount to $1,666.66; that thereafter she will deliver to the parties of the second part one-fourth of the royalties accruing under said lease and paid by said lessee and one-fourth of any money paid by said Drury upon account of said option, provided that when the aggregate royalties and moneys delivered by said Zimmerman to the parties of the second part shall amount to $14,500 said parties of the second part shall have no further claim of any kind or nature whatsoever against the said Zimmerman of said property.

"It is further agreed that, should the said Drury surrender or forfeit said lease and option, this agreement shall extend to royalties and payments on option or purchase price received by said Zimmerman from any other lessee or optionee or purchaser of her interest in said property, provided that said parties of the second part shall receive at all events not less than three and three-fourths per cent. of the gross output of said mining claim and 'one-fourth of the moneys received upon account of option or purchase price until they shall have received in the aggregate said sum of $14,500.

"It is further agreed that the parties of the second part shall receive twenty-five per cent. of the gross output from the first level of said mining claim until the aggregate received by them shall amount to $3,333.33, whether the same be mined by lessee or any or all of the owners.

"To secure the prompt delivery of said royalty and parts of money received on account of option or purchase price the said Zimmerman hereby gives to the parties of the second part a lien upon her interest in said mining claim, subject, however, to the lease and option given to the said Drury to purchase her interest; and upon full performance by him of the conditions of said lease and option his title to said interest shall be free and clear of the lien hereby given.

"In witness whereof the parties hereto have hereunto set their hands this 17th day of June, 1914.

"A. M. Zimmerman.<br>
"R. F. Roth.<br>
"Lurisse T. Maddocks,<br>
"By Roy E. Maddocks, Attorney in Fact."

Reed W. Heilig, of Portland, Or., and R. F. Roth, of Fairbanks for plaintiffs.

Morton E. Stevens, of Fairbanks, for defendant.

BUNNELL, District Judge. In order to determine what was intended by the parties to this contract on the date of the execution of the same, since it is lacking in detail, and from the pleadings it is apparent that there is a diversity of opinion as to its interpretation by plaintiffs and defendant, the court has admitted much testimony that otherwise should properly, be excluded. The consideration is expressed, and is not denied, and there can be no question about it being intended by all parties that the undivided one-half interest in the Rainbow claim belonging to the defendant, together with all the right, title, and interest of the plaintiffs in and to the personal property described in plaintiffs' bill of sale to the defendant under date of June 17, 1914, should be impressed with a lien in the sum of $14,500. This is the lien they made by their contract, and the court will not disturb it. They were parties capable of contracting, and the subject-matter was properly the subject of contract.

There is a preponderance of evidence to show that the agent and attorney in fact of the defendant gave the plaintiffs to understand that the property would be mined, and that the defendant was in a better position than the plaintiffs to accomplish such a result. The testimony is conflicting, but in weighing it one must bear in mind that the paramount purpose of the defendant was to get possession of the property and eliminate what she believed had been gross mismanagement in the past. On the same day that she impressed this property with a lien, she and her co-owner entered into a contract with Drury, providing therein for the working of the property. The entire testimony shows that all parties looked forward to an immediate development and operation of the claim. The defendant reserves to herself only that she incur no personal liability. There is no testimony to show that the defendant did not intend to mine the property. Likewise there is nothing to show that she intended to prevent it from being mined. It naturally follows, just as the evidence discloses, that at the time the parties thereto entered into the agreement of June 17, 1914, it was with the expectation that the property would be forthwith

mined.  The defendant reserves to herself but one condition, and that is that she incur no personal liability.  But, even if the plaintiffs had offered no evidence to show a contemporaneous agreement to operate the property, the contract itself contains an implied agreement that the property shall by the mining thereof discharge either in whole or in part the lien with which it is impressed.  In principle I can see no distinction between the case of Pritchard v. McLeod, 205 Fed. 24, 123 C. C. A. 332, and the case at bar.  In that case the property under the contract of sale by the nature of the transaction was impressed with a lien for the unpaid portion of the purchase price. Here the owner for a valuable consideration by her fixed and determined, and it must be presumed for her benefit, impresses her property with a lien.  The difference in facts in the two cases does not change the equitable principle involved.

This action was not instituted until nearly five years after the contract of June 17, 1914.  It is now nearly six years since the plaintiff Roth surrendered possession of the premises.  The evidence does not show on the part of the defendant what a court of equity can properly say is a reasonable diligence on her part to either sell or lease the property.  Diligence means more than being in a receptive frame of mind to entertain an offer.  It means to exert one's self ; to make earnest endeavor. In this case opportunities for the defendant to sell or lease the property seem to have originated generally through the efforts of the plaintiffs to have the defendant make some disposition of the property.  These efforts on the part of the plaintiffs were without results, because, as the evidence discloses, no proposition would be entertained by the defendant, if it would permit the husband of the plaintiff Maddocks to be interested in the management of mining operations upon the Rainbow claim.

The position taken by the defendant is that she may continue to decline to lease or sell the property until such time as in her opinion the conditions are more favorable for mining. Much testimony has been submitted to show that the cost of mining is greater than it was in 1914.  It can well be admitted that not only does it cost more to mine now than it did in 1914, but that it costs more to operate every other kind of industry. The evidence does show, however, that this particular property can be operated at a small profit.

A decree of foreclosure may be entered in accordance with the prayer of the plaintiffs' complaint, provided, however, that no sale of the property shall be had if the defendant within 60 days from this date pays to the plaintiffs herein the amount of their lien in the sum of $14,500.