### MERRIAM *v.* UNITED STATES.

1. In construing contracts, a court may look not only to their terms, but to their subject-matter and the surrounding circumstances, and avail itself of the same light which at the time of making them the parties possessed.
2. Under the contract sued on in this case, *infra*, p. 439, the United States was not bound to receive a greater quantity of oats than that which is therein specifically mentioned.

APPEAL from the Court of Claims.

Merriam brought suit in the Court of Claims against the United States to recover damages for their breach of a contract by which he agreed to sell and deliver, and they to receive and pay for, a quantity of oats. His petition was dismissed, and he appealed.

That court found the following facts: The Chief Quartermaster of the Military Department of Dakota published an advertisement, the parts of which and of the circular therein referred to, so far as they are material to this case, are as follows:—

"CHIEF QUARTERMASTER'S OFFICE,
"ST. PAUL, MINN., March 1st, 1877.

"Sealed proposals in triplicate, subject to the usual conditions, will be received at this office . . . until 12 o'clock noon, on the twenty-sixth day of April, at which time they will be opened in the presence of bidders, . . . for furnishing and delivering of wood, coal, grain, hay, and straw, required during the fiscal year commencing July 1, 1877, and ending June 30, 1878, at the following

posts and stations, viz.: (Here follows a list of the posts and stations for which the supplies were required.)

· " Separate bids should be made for each post and for each class of supplies. . . . The government reserves the right to reject any and all bids. In bidding for grain, bidders will state the rate per 100 pounds and not per bushel.

" Blank proposals and printed circulars stating the kind and estimated quantities required at each post, and giving full instructions as to the manner of bidding, conditions to be observed by bidders, and terms of contract and payment, will be furnished on application," &c.

The circular referred to contains these clauses:—

" The following are the estimated quantities of supplies that will be required at each post, but the government reserves the right to increase or diminish the same at any time during the continuance of the contract, and to require deliveries to be made at such times and in such quantities as the public service may demand: Fort Abraham Lincoln, D. T., 2,404,000 pounds oats; Fort Buford, D. T., 256,000 pounds oats; Cheyenne Agency, D. T., 131,000 pounds oats; Camp Hancock, D. T., 5,400 pounds oats; Lower Brule Agency, D. T., 34,300 pounds oats; Fort Randall, D. T., 233,000 pounds oats; Fort Rice, D. T., 1,000,000 pounds oats; Standing Rock Agency, D. T., 255,000 pounds oats; Fort Stevenson, D. T., 96,000 pounds oats; Fort Sully, D. T., 50,000 pounds oats.

" Proposals are invited for the furnishing and delivering" of " grain for Forts Abraham Lincoln, Buford, Randall, Rice, &c., &c., either at Sioux City, Yankton, Bismarck, or Fort Abraham Lincoln."

In accordance with the advertisement one Hall proposed to furnish 4,000,000 pounds of oats, to be delivered at Bismarck, for $2.25 per hundred pounds; and the appellant proposed to furnish, at the same place, 1,600,000 pounds of oats at $2.23$\frac{7}{16}$ per hundred pounds, a like quantity at $2.28$\frac{1}{8}$, another like quantity at $2.31, and another like quantity at $2.37, — making 6,400,000 pounds the entire quantity which he bid to furnish and deliver.

On May 18, 1877, an award was made to the appellant for furnishing and delivering at Bismarck 1,000,000 pounds of oats at $2.23$\frac{7}{16}$ per hundred pounds. On June 27 an award was made

to Hall for furnishing and delivering at Bismarck 2,620,000 pounds of oats at $2.25 per hundred pounds; and on the same day a further award was made to the appellant for furnishing and delivering, at the same place, 600,000 pounds of oats at $2.23$\frac{7}{16}$ per hundred pounds.

On June 29, 1877, the contract on which this action was brought was executed by the quartermaster in behalf of the United States and by the appellant. It was made on a printed blank furnished by that officer. The first article of the agreement is as follows: —

"ARTICLE I. That the said John L. Merriam, his heirs, assigns, administrators, and executors, shall supply, or cause to be supplied and delivered to the quartermaster's department at the military station of Bismarck, D. T., six hundred thousand pounds, more or less, of oats, at two dollars and twenty-three and seven-sixteenths cents ($2.23$\frac{7}{16}$) per one hundred pounds, the oats to be of good merchantable quality, free from dirt or other foreign matter, and to be delivered in good, new burlap sacks, each sack to contain no greater quantity than 128 pounds, or such other quantity, more or less, as may be required from time to time for the wants of said station, between the first day of July, 1877, and the thirty-first day of December, 1877, in such quantities and at such times as the receiving officer may require: *Provided*, that this contract is approved by the commanding generals of the Department of Dakota, and of the Military Division of the Missouri; otherwise not until such approval is obtained."

In accordance with the award to him, dated May 18, 1877, the appellant had previously entered into another contract with the quartermaster acting on behalf of the United States, bearing date May 15, 1877, for the delivery of 1,000,000 pounds of oats, which was identical in terms with the above-mentioned contract, except that the words "Or such other quantity, more or less, as may be required from time to time for the wants of said station, between the first day of July, 1877, and the thirty-first day of December, 1877, in such quantities and at such times as the receiving officer may require," found in Article I., were omitted.

Two other contracts, dated June 29, 1877, were made between said quartermaster and said Hall, in accordance with his

said bid, one for the delivery of 665,000 pounds of oats, and the other for the delivery of 1,955,000 pounds, each at $2.25 per one hundred pounds. In other respects the two contracts were identical in form with those of the appellant, the one first above mentioned having the same words omitted which were omitted from the appellant's contract of May 15, 1877, and the other containing them.

There were delivered at Bismarck, as under the two contracts of Hall, by parties other than the appellant, 3,116,616 pounds of oats, between July 1, 1877, and Dec. 31, 1877.

The appellant, after the execution of his said contracts respectively, commenced delivering oats thereunder, and by July 12. 1877, had delivered more than 1,600,000 pounds specifically mentioned in the two contracts, the excess having been received by the acting assistant quartermaster at Bismarck, by mistake, and he was paid in full for all that he had delivered.

Subsequently he offered to deliver nine car-loads of oats, but they were refused.

Neither the receiving officer nor any other officer of the United States required the appellant to supply for the wants of said station any other quantity of oats than that specifically mentioned in the contract sued on; and the appellant did not ask to be informed whether any other quantity would be required, and although he repeatedly offered the several car-loads of oats above mentioned to the acting assistant quartermaster, and requested him to take them in order to clear up all he had at Bismarck, and get the railroad company's cars unloaded, he never demanded it as a right under his contract.

Within the time mentioned in his contract the appellant had the means to deliver oats to the full extent of the quantity delivered under Hall's contract by other parties, in addition to that which was received from him, had he been required and permitted so to do, and he was ready and willing to make such delivery, although he gave the defendant's officers no notice to that effect, and made no other offers than that above set forth.

The appellant suffered some loss by reason of the non-receipt by the defendants of the several car-loads of oats above mentioned, and by being obliged to sell the same to other parties; and some loss of profits which he would have made if he had

delivered at the contract price oats to the extent of the quantity received by the defendants under said Hall's contracts, in addition to the quantity which he did deliver, and for which he was paid.

*Mr. John B. Sanborn* for the appellant.
*The Solicitor-General* for the United States.

MR. JUSTICE WOODS delivered the opinion of the court, and, after making the foregoing statement, proceeded as follows : —

The contention of the appellant is, that under that clause of the contract sued on which provides as follows: "Said Merriam shall supply 600,000 pounds, more or less, of oats, . . . or such other quantity, more or less, as may be required from time to time for the wants of such station between the first day of July, 1877, and the thirty-first day of December, 1877, in such quantities and at such times as the receiving officer may require," he was bound to deliver, and the United States to receive, in addition to the 1,600,000 for which his bid was accepted, all the oats needed for the wants of the station between the dates mentioned. And as it appears from the finding of the Court of Claims that a large quantity of oats, over and above that received from the appellant, was received at Bismarck between the dates mentioned, under the contract made with Hall, and that the appellant's offer to furnish a quantity of oats in addition to the amount specifically mentioned in his contract was declined, that a breach of his contract is shown, for which he is entitled to damages. It is contended on behalf of the United States that under the contract sued on the appellant was bound to deliver, and the United States to receive, 1,600,000 pounds of oats, and no more, unless required to do so by the quartermaster. The only question presented by the record is, which of these two constructions of the contract is the true one.

It is a fundamental rule that in the construction of contracts the courts may look not only to the language employed, but to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made. *Nash* v. *Towne,* 5 Wall. 689; *Barreda* v. *Silsbee,* 21 How. 146, 161; *Shore* v. *Wilson,*

9 Cl. & Fin. 355, 555; *McDonald* v. *Longbottom,* 1 El. & El. 977; *Munford* v. *Gething,* 29 L. J. C. P. 110; *Carr* v. *Montefiore,* 5 B. & S. 407; *Brawley* v. *United States,* 96 U. S. 168.

Thus, in the case of *Doe* v. *Burt,* 1 T. R. 701, where a lease had been made by the plaintiff to the defendant of part of a messuage, together with a piece of ground thereunto adjoining, which piece of ground was used as a yard, and beneath the yard was a cellar, occupied by a third party under a lease previously granted to him by the plaintiff, and the occupant of the cellar continued to reside in it and to pay rent to the plaintiff for three or four years after the latter had demised the yard to the defendant, but his lease having expired, and he having quitted the cellar, the defendant took possession of it, contending that it had passed to him by the demise of the yard, the court held that parol evidence of the surrounding circumstances was admissible to show that it did not pass.

Availing ourselves of the light thrown on the contract in this case by the circumstances under which it was made, we are of opinion that the construction claimed for it by the appellant cannot be sustained.

The specific quantity of oats to be delivered at Bismarck, for which the circular for the information of bidders invited proposals, was 4,464,700 pounds. The appellant made bids for 6,400,000 pounds; 1,600,000 pounds of which were at the price of $2.23$\frac{7}{16}$ per hundred pounds, 1,600,000 at $2.28$\frac{1}{8}$ per hundred pounds, and the residue at still higher prices. His bid for 1,600,000 pounds at $2.23$\frac{7}{16}$ per hundred pounds was the only bid made by him which was accepted. The bid of Hall was at the same time accepted for 2,620,000 pounds at $2.25 per hundred pounds, and contracts were made with him for the delivery of that amount. It thus appears that the lowest bids were accepted, and contracts made in accordance therewith. The contracts made with both the appellant and Hall were identical in form. The bids accepted fell a little short of the entire quantity for which bids were asked. The appellant now insists that by reason of the clause in his second contract, by which, in addition to the specific quantity of oats therein mentioned, he agreed to supply such other quantity, more or less, as might be required for the wants of said station, and

which also was found in the second contract made with Hall, the United States were bound to receive from him oats for which his bid was not accepted, and for the delivery of which the bid of Hall, lower than his own, was accepted. It is perfectly clear, from these circumstances, that the officers of the United States who had this matter in charge did not understand the contract with appellant as he now claims to construe it. In other words, they did not intend to contract with two different persons for twice the quantity of oats needed for the wants of the station. Nor did they intend, after making awards to two different bidders for specific quantities of oats to disregard the awards and enter into contracts by which the higher bidder should supply all the oats.

We think the facts found by the Court of Claims show also that the construction now claimed by the appellant could not have been his understanding of the contract when it was made. The advertisement calling for bids announced that they would be opened in the presence of bidders. The appellant bid to furnish 6,400,000 pounds of oats. His bid was accepted for only 1,600,000 pounds out of the 4,464,700 pounds for which bids were specifically invited. On the same day on which the contract sued on was executed the same quartermaster executed two contracts with Hall for the oats, the furnishing of which had been awarded to him.

It is not specifically found by the Court of Claims that the appellant knew that the bids of Hall for nearly all the oats needed at the station, not awarded to the appellant, had been accepted, nor that he knew that contracts had been made with Hall for the delivery of the oats in accordance with the awards made to him. But he knew that his own bid was accepted for less than half of the quantity for which bids were invited. He must have known, therefore, that he had a successful competitor in the biddings, who entered into the required contract for the delivery of the oats for which the bid of the latter had been accepted by the officer acting on behalf of the United States; for the printed circular informed him that the bidder whose proposal was accepted would be required to enter into a contract to perform his bid, and he himself had been required to execute a contract to deliver the oats which it was awarded to him to furnish.

These facts being known to the appellant, he could not have understood the contract sued on, which was made on the same day as the contract with Hall, as he now contends it should be interpreted. If, therefore, the circumstances surrounding the making of the contract were such that neither party to it could have construed it as the appellant now claims it should have been construed, we must reject that construction and seek one fairly justified by the language of the contract, more consistent with the circumstances of the case. Under the light of these circumstances it is clear that the contract bound the appellant to deliver, in addition to the specific quantity named, such other quantity, more or less, of oats, as might be needed from time to time for the wants of the station, and as he might be required to deliver.

That such was the appellant's understanding of the contract is evident from the further fact found by the Court of Claims, that the appellant never asked to be informed whether or not any other oats above the quantity specifically mentioned in his contract would be required; and when he offered the nine carloads of oats to the receiving officer he requested him to take them in order to clear up all he had at Bismarck and get the railroad company's cars unloaded, but never claimed that he had the right to deliver the oats under his contract. It is, therefore, plain that the interpretation he now puts on his contract is an afterthought, and is not the interpretation put upon it by the parties when it was executed.

The construction we have put upon the contract does no violence to its language. The provision that the oats required for the wants of the station, over and above the quantity specifically mentioned in the contract, were to be delivered in such quantities and at such times as the receiving officer might require, may well be construed to leave with him a discretion to call for the additional oats or not, as in his judgment they were or were not necessary for the wants of the station; and if he required none, the appellant was bound to deliver and the United States to receive none.

We are of opinion that the Court of Claims was right in dismissing the petition of the appellant.

*Judgment affirmed.*