## THE CALABRIA.

*(District Court, S. D. New York. July 3, 1885.)*

CHARTER-PARTY — CONSTRUCTION — "THE SEASON OF 1882" — PRIOR CONTRACT BY TELEGRAMS — EVIDENCE.

Where a complete contract for the charter of a vessel was made by telegram "for the season of 1882, ending October 31st," and the vessel made one voyage under the contract at lower rates than for single voyages, and a formal charter was then drawn up, and was signed by the captain, in the charterer's office, for "the season of 1882," omitting the words "ending October 31st," and the evidence showed that no new or different contract was intended from that already partly executed, *held*, that the prior contract by telegram was competent evidence of the intention of the parties, and of the meaning of the phrase "season of 1882," although, in the absence of such evidence, the expression by custom would bind the vessel until navigation was closed by ice; accordingly *held*, that the captain was justified in refusing to run under the charter after October 31st.

In Admiralty.
*Jennings & Russell*, for libelants.
*Jas. K. Hill, Wing & Shoudy*, for claimants.

BROWN, J. This was an action for damages on a charter-party, for the vessel's refusal to continue her trips after October 31st until the actual close of navigation, some six weeks subsequent. A perfect contract between the libelants and the master of the Calabria had been made by telegrams. After a series of negotiations the libelants definitely accepted, by telegram, the offer of the Calabria, at a definite price, "for the season ending October 31st." The Calabria made one voyage under this contract, and in part fulfillment of it, at less rates than for single voyages; and then, in the libelants' office, a more formal charter-party was drawn up, chartering the vessel "for the season of 1882," without repeating the words of the telegram, "ending October 31st." In interpreting the meaning of the ambiguous phrase, "the season of 1882," in this charter, the prior telegrams were competent evidence, and must be taken into consideration. *Merriam* v. *U. S.* 107 U. S. 437; S. C. 2 Sup. Ct. Rep. 536; *Brawley*

v. *U. S.* 96 U. S. 168; *Rhodes* v. *Cleveland R. M. Co.* 17 FED. REP. 426; *Knowles* v. *Toone,* 96 N. Y. 534. They control and limit the meaning of the phrase, "the season of 1882," and prove beyond controversy the sense in which that phrase was used and the intent of the parties. That intent is controlling. In the case of *The Miantinomi,* 3 Wall. Jr. 46, the word "ton" was thus shown to be intended to be 2,240 pounds, and not the statutory ton of 2,000 pounds.

The contract by telegram in this case was a binding contract. It was made after somewhat prolonged negotiations. It was partly executed, and could not be changed except by some subsequent contract intended to vary it, upon which the minds of the parties met. The evidence satisfies me beyond doubt that, in the execution of the more formal charter, no change in the previous contract was intended, at least, on the captain's part. His testimony is explicit that it was stated by him at the time that the season was to end as agreed on by the telegrams. There was no conceivable motive for the captain's receding from this part of the existing contract. The object of the meeting at the libelants' office was not to make a new contract. The contract was already fixed and certain. The object was merely to put the existing contract into more formal shape. In fixing the meaning of the phrase, "the season of 1882," the informal contract by telegram must be read with the formal contract afterwards drawn up, as explanatory of it. The telegrams make certain the intention of the parties, unless there be evidence of a common intention to make a new contract; and there clearly was no such common intent. If the indorsement on the charter by Mr. Wooster was intended to hold the captain to anything different, it is clear that the captain did not assent to it. The captain did not sign it; and it is no part of the charter itself. Mr. Wooster's testimony also shows that the season was to close on the thirty-first of October, "if the captain wished, or had any offer, to carry deals off shore." In that conversation it appears that the only point spoken of by Mr. Wooster as material to him was that the captain should not, after the thirty-first of October, enter the service of the libelants' rivals and competitors in business. The captain stated that he had no wish to do so; and after the thirty-first of October he did not do so.

I cannot find, therefore, that the libelants have either a legal or a meritorious cause of complaint; and the libel should, therefore, be dismissed, with costs.