## ARMOUR PACKING CO. v. METROPOLITAN WATER CO.

(Circuit Court of Appeals, Third Circuit. June 27, 1904.)

No. 46.

1. MUNICIPAL CORPORATIONS—WATER FRANCHISE—ORDINANCES—CONTRACTS.

A city ordinance granting a corporation a franchise to operate waterworks in the city on conditions specified, after having been accepted by the corporation, constitutes a contract between the corporation and the city.

2. SAME—CONSTRUCTION.

Where a municipal ordinance granting a corporation a water franchise provided that the water rates to consumers should not exceed the rates given to the citizens of an adjoining city, to which the corporation also furnished water under a similar franchise, such provision should be construed to relate only to prices charged by such corporation, and did not include prices charged by such adjoining city after it had exercised its statutory right to purchase the corporation's water plant therein and operate the same as a municipal department.

In Error to the Circuit Court of the United States for the District of New Jersey.

The following is the opinion of the court below (Kirkpatrick, District Judge):

The plaintiff in this case is the Metropolitan Water Company, a corporation organized under the laws of the state of West Virginia, and the defendant is the Armour Packing Company, a corporation organized under the laws of the state of New Jersey, but carrying on its principal business in the cities of Kansas City, Kansas, and Kansas City, Missouri, which cities are contiguous, and separated from each other by the state line. On February 19, 1897, these parties entered into a contract which was to continue for a period of five years from March 1, 1897, by which the plaintiff agreed to furnish to defendant a supply of water of not less than fifteen million gallons nor more than twenty-five million gallons per month at the prices therein specified. It was provided in the contract that at any time after March 1, 1898 "either party shall have the right to this contract to take or furnish water by giving the other party one year's notice in advance from the date of giving such notice that said company, whichever it may be, desires to discontinue the same." On October 7, 1898, the defendant served a notice on the water company that "it elects to discontinue the contract of February 19, 1897, and elects to decline to take or pay for water furnished under said proposition, and hereby give to you the one year's notice in advance of its desire to discontinue the same, and said contract will stand discontinued, and water will no longer be taken nor need

be furnished thereunder from and after the seventh day of October, 1899." Notwithstanding said notice, the defendant continued to receive and the plaintiff continued to furnish the defendant with water after said date. This controversy relates to the price to be paid by defendant for the water so furnished. The first contention of the plaintiff is that the rate should be that fixed by the contract of February 19, 1897, because, although a notice was given of an intention to abrogate it, yet by entering into negotiations for its continuance and the acceptance of water after the time fixed for its termination, the defendant waived its notice of cancellation. It is true such negotiations were had, but no agreement was reached. So far as appears from the correspondence between the parties, not only was there no waiver of the notice to refuse to take under the contract, but a continual insistment on the part of the defendant upon the efficacy of the notice which had been given and upon its right to receive water after the termination of the contract at the rates prescribed by law. The rates fixed in the contract were special, and the defendant relinquished its right to receive them by its termination. The contract being ended, the defendant, as one of the inhabitants of Kansas City, was entitled to receive water upon the payment of the legal rates as fixed by the ordinances of the city regulating the same. The plaintiff was obliged, by its franchise, to furnish water to all the inhabitants of Kansas City upon payment of the legal rates therefor, and the right of the defendant to take and receive water was in no way dependent upon the contract, which merely fixed the price to be paid by it. So, the contract being terminated by the notice, the taking of the water under this general right could not be construed into a continuance of the contract. It cannot be said that in relinquishing its special privileges under the contract the defendant was precluded from obtaining water upon the same terms offered to the general public. In my opinion, the contract of February 19, 1897, was canceled by the notice of October 7, 1898.

The remaining question is, at what rate is plaintiff entitled to charge and defendant obliged to pay for the water furnished since its expiration? This question of price is regulated by the ordinances of the city. Ordinance No. 2,131 relates to that part of Kansas City, Kansas, in which defendant's plant is located, and established the rates to be charged to consumers. It is insisted, however, that the rate fixed in this ordinance does not apply, because appended to the ordinance is note 3, which is as follows: "It is also agreed that if any less rate is given to Kansas City, Missouri, during the continuance of this franchise the same schedule of rates shall apply under this ordinance, and any other benefits given to Kansas City, Missouri, shall apply both to public and private consumers." In order to properly ascertain the intention of the parties when entering into this contract, it will be necessary to consider their relation to each other before and at the time the ordinance went into effect. The National Waterworks Company was organized about the year 1874 for the purpose of supplying Kansas City, Missouri, with water, and obtained from its authorities the franchise of laying its pipes in the public streets of that city. Afterwards, about 1881, it obtained a like grant for a like purpose from Kansas City, Kansas. Water was being furnished to the towns of Wyandotte and Armourdale, adjoining Kansas City, Kansas, by a separate company, which, upon the consolidation of Wyandotte and Armourdale with Kansas City, Kansas, into one municipality, was subsequently merged into the National Waterworks Company, so that in 1891, when Ordinance 2,131, as above, was approved, the National Waterworks Company was furnishing water to Kansas City, Missouri, and Kansas City, Kansas, which latter comprised old Kansas City, Kansas, and the towns of Wyandotte and Armourdale. Inasmuch as the two cities of Kansas City were contiguous, separated only by the state line, it was deemed advisable that the citizens of each should enjoy equal benefits in regard to the rates required to be paid for water furnished by this company which supplied it to both. So long as the National Waterworks Company controlled the plants in both cities, the rates were uniform, and so continued until January 15, 1898, when Ordinance No. 10,951 was passed by the authorities of Kansas City, Missouri, establishing a lower rate for that city. It appears that in the year 1895 the city of Kansas City, Missouri, purchased of the National Waterworks Company the waterworks of said company located in their city, and the National Company sold its works in Kansas City, Kan-

sas, to the plaintiff company. So far as Kansas City, Missouri, was concerned, the National Waterworks Company ceased to do business and no longer was in a position to furnish rates to Kansas City, Missouri, either to the public or to private consumers. The rates in that city were fixed by itself, and while the waterworks company might have agreed that it would charge to Kansas City, Kansas, the same rates which might be charged in Kansas City, Missouri, the contract will not bear that interpretation. In my opinion, the water company was stipulating for the acts which it would perform. It was the owner of both plants, and the true meaning of the note 3 was that, if a less rate than that named in the ordinance were given by it (that is to say, the water company) to Kansas City, Missouri, the same schedule of rates should apply (that is to say, be given by it) to Kansas City, Kansas. It will be observed that it is also provided in the contract that "any other benefits given to Kansas City, Missouri, shall apply also to public and private consumers" in Kansas City, Kansas. Certainly this must have been intended to apply to benefits given by the water company. The object of the ordinances was to produce uniformity. Equal rates were fixed in both cities, and, while the plaintiff company was left free to reduce its rates in either city, yet it could not reduce in one city without at the same time conferring equal benefits upon the other. There is nothing in the agreed case tending to show that a change of ownership or a separation of the plants was in contemplation at the time the contract was made. It was not intended that the National Water Company should surrender its franchise, or permit a stranger to change its rates at will and without its consent. The agreement (note 3) cannot be made to apply to the changed condition, and when the National Waterworks Company ceased to supply water to both cities the obligation to supply water at a uniform rate ceased. The conclusion is that the plaintiff is entitled to recover from the defendant the price fixed for water by the Ordinance 2,131 of Kansas City, Kansas, without reference to the rate fixed by the municipality of Kansas City, Missouri. In computing the amount due, allowance must be made for whatever sums have been paid to the plaintiff on account, as agreed upon in the state of the case.

Frank H. Platt, for plaintiff in error.

James E. Howell, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This was an action brought by the Metropolitan Water Company against the Armour Packing Company to recover the price of water furnished by the plaintiff to the defendant at Kansas City, in the state of Kansas, less such sums as admittedly had been paid thereon. The controversy between the parties concerns the price which the defendant is bound to pay for the water so furnished; and the question in dispute arises upon an ordinance (No. 2,131) of the city of Kansas City, Kan., passed in council on December 4, 1891. The parties differ as to the meaning and effect of that ordinance. For the proper understanding of the question in dispute certain facts must be stated.

Kansas City in the state of Kansas and Kansas City in the state of Missouri adjoin each other, the state line separating the two cities. In the year 1874 the National Waterworks Company received from Kansas City, Mo., a franchise to lay its pipes in the public streets of that city for the purpose of supplying the city and its inhabitants with water; and thereafter, and until the year 1895, that company owned, maintained, and operated under said franchise a waterworks system in Kansas City, Mo., supplying that city and its inhabitants with water. On November 29, 1891, by Ordinance No. 173, Kansas City,

Kan., granted to the National Waterworks Company a franchise to supply water to that city and its inhabitants and other consumers therein for a period of 10 years. The eighth section of this ordinance (No. 173) reads thus:

"Sec. 8. The water rates to consumers shall not exceed the rates paid by the citizens of Kansas City, Missouri, at any time, and shall be paid for such time as the grantee may deem best for both parties."

Adjoining Kansas City, Kan., in 1881, were two municipalities known as "Wyandotte" and "Armourdale." Waterworks were erected for the purpose of supplying these municipalities with water, and the franchises therefor were combined in 1885 in the Wyandotte-Armourdale Water Company. In that year the National Waterworks Company acquired all the stock and bonds of the Wyandotte-Armourdale Water Company, and changed its name to Kansas City Water Company. Afterwards, by virtue of its ownership of all the stock and bonds of that company, the National Waterworks Company furnished water to Wyandotte and Armourdale. By 1891, old Kansas City in the state of Kansas and Wyandotte and Armourdale were consolidated into one municipal corporation under the name of Kansas City, Kan. On December 4, 1891, the city of Kansas City, Kan., passed two ordinances in the same terms (No. 2,130 and No. 2,131). Ordinance No. 2,130 relates to the franchises originally given to water companies to supply water to that part of Kansas City, Kan., which was formerly Wyandotte and Armourdale, and that ordinance applies to that section of the city. Ordinance No. 2,131 relates to the franchise granted by Ordinance No. 173, above mentioned, to the National Waterworks Company, and applies to that part of Kansas City, Kan., in which the packing house of the defendant below is located, and where the water in question was furnished to the defendant. As already stated, it is out of Ordinance No. 2,131 that this controversy has arisen. This ordinance enacts:

"Section 1. That Ordinance No. 173 of the former city of Kansas, state of Kansas, being an ordinance entitled, 'An ordinance to provide a supply of water for the inhabitants of the city of Kansas, state of Kansas,' approved Nov. 29, 1881, be and the same is hereby ordained an ordinance of the city of Kansas City, and that all rights, privileges and franchises therein granted are hereby granted unto the said the National Water Works Company of New York, and its successors and assigns, for the term of fifteen years from and after the passage, approval, acceptance and publication of this ordinance, under the conditions and restrictions named in said ordinance, No. 173, and under the further conditions that from and after the publication of this ordinance and during the continuance of said franchise, the compensation for each hydrant now located or that may be located hereafter by the said city of Kansas City, shall be at the rate of fifty ($50) dollars per annum from and after January 1st, 1892, and the said city hereby agrees to pay such sum for such rental semi-annually in January and July of each year. The water rates to consumers during the continuance of this franchise shall be as per following schedule."

Here follows a schedule of water rates to consumers. Then, in note 3, this ordinance contains the following stipulation:

"It is also agreed that if any less rate is given to Kansas City, Missouri, during the continuance of this franchise, the same schedule of rates shall apply under this ordinance and any other benefits given Kansas City, Missouri, shall also apply both to public and private consumers."

In 1895 the city of Kansas City, Mo., in the exercise of a statutory right, purchased the waterworks and water system of the National Waterworks Company located in Missouri, and has since maintained and operated the same. On December 6, 1898, the city of Kansas City, Mo., passed an ordinance (No. 10,951) fixing the water rates to be charged by that city for water furnished by that city to consumers, which ordinance has since been in force. In 1895 the National Waterworks Company caused the Metropolitan Water Company, the plaintiff, to be organized, and caused all the waterworks properties and franchises in Kansas City, Kan., to be transferred to that company. The Armour Packing Company claims here, as it did in the court below, that Ordinance No. 10,951 of Kansas City, Mo., passed on December 6, 1898, fixes the rate at which it may take water from the plaintiff in Kansas City, Kan., and this by reason of the provisions of Ordinance No. 2,131 of the latter named city. The court below, however, declined to adopt this view. The court was of opinion that in and by note 3 of Ordinance 2,131 of Kansas City, Kan., the National Waterworks Company stipulated only for its own acts, and what the stipulation meant was that, if the water company gave to Kansas City, Mo., lower rates than those specified in Ordinance No. 2,131, then the water company should give the same reduced rates to Kansas City, Kan. The court therefore held that the rates which Kansas City, Mo., by its ordinance of December 6, 1898, fixed for the consumers of water in that city, did not bind the plaintiff in respect to water furnished by it to consumers in Kansas City, Kan., under its franchise granted by that city by Ordinance No. 2,131. Accordingly, upon the agreed statement of facts the court gave judgment in favor of the plaintiff in the sum of $8,542.30.

The question we are called on to determine upon this writ of error is whether the court below rightly construed Ordinance No. 2,131. That ordinance, having been duly accepted by the National Waterworks Company, became a contract between the water company and the city of Kansas City, Kan. It therefore, like other contracts, is to be interpreted—if the meaning be in any respect doubtful—with reference to the circumstances surrounding the parties at the time it was made. Canal Company v. Hill, 15 Wall. 94, 21 L. Ed. 64; Merriam v. United States, 107 U. S. 437, 2 Sup. Ct. 536, 27 L. Ed. 530. Now, at the time of the passage and acceptance of Ordinance No. 2,131, the National Waterworks Company was the owner of the waterworks in Kansas City, Mo., and was supplying that city with water. It was natural and reasonable that the grant of the water franchise to that company by Kansas City, Kan., should provide that the water company should not exact from that city greater water rates than it should give to Kansas City, Mo. Note 3 of the ordinance employs apt language to effectuate such purpose. The parties to the contract which is embodied in Ordinance No. 2,131 were fixing water rates as between themselves. It may therefore well be supposed that they contracted with reference to the then existing state of affairs—with respect to the fact that the grantee of the franchise conferred by Ordinance No. 2,131 owned the waterworks and system in Kansas City, Mo., and was furnishing water to that city and its inhabitants under a franchise granted by that city.

It does not appear that any change in water service was then in contemplation. Kansas City, Mo., indeed, had a statutory right to purchase the waterworks in that city at the expiration of the then current term of the water franchise, if the grant thereof was not renewed. But such acquisition by the city was not impending at the time of the passage of Ordinance No. 2,131. If it had been the intention of the parties that water rates to consumers in Kansas City, Kan., should not exceed the rates which Kansas City, Mo., might establish for consumers in that city, different language would have been used from that contained in note 3. We think, with the court below, that the words, "if any less rate is given to Kansas City, Missouri, during the continuance of this franchise, the same schedule of rates shall apply under this ordinance, and any other benefits given Kansas City, Missouri, shall also apply both to public and private consumers," are fairly referable to the acts of the National Waterworks Company —to rates and benefits given by that company.

We are not able to accept the view suggested by counsel for the plaintiff in error that section 8 of the old ordinance No. 173 is to be treated as still in force, and be read into Ordinance No. 2,131 by virtue of the general language of section 1 of the latter ordinance. Ordinance No. 173 did not fix any schedule of water rates to consumers, and section 8 was intended as a limitation upon the rates which the water company might charge consumers. But Ordinance No. 2,131 fixes the water rates to consumers by a schedule of rates set out in the ordinance, subject to the single exception expressed in note 3. The provision of Ordinance No. 173 in respect to rates was not continued, but was superseded, by the express provisions of Ordinance No. 2,131.

We are of opinion that the conclusion which the court below reached is in accordance with the true meaning of Ordinance No. 2,131, and accordingly the judgment is affirmed.