"SAMPLINER et al. v. MARYLAND CASUALTY CO.

No. 6132.

Circuit Court of Appeals, Sixth Circuit.

Feb. 17, 1933.

Samuel Doerfler, of Cleveland, Ohio (Bloomberg & Wolf, of Cleveland, Ohio, on the brief), for appellant.

W. C. Keough, of Cleveland, Ohio (Mooney, Hahn, Loeser, Keough & Beam, of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

Decision necessitates the interpretation of a written obligation executed by appellants' decedent, Samuel S. Sampliner, to indemnify the appellee against loss upon a surety bond written by it for another. The sole question involved relates to the admissibility of evidence offered by the appellee to explain the writing and to identify its subject-matter. The facts sought to be established by parol evidence are not disputed. The result must be that, if the writing is clear and unambiguous, and its subject-matter sufficiently certain, the appellants must prevail; otherwise they must fail.

On September 25, 1925, one Clara Anne Kennedy, as principal, executed a surety bond in the sum of $6,000 to Susanna Mellinger, with the appellee as surety. The bond was written at the request of J. G. Kennedy, husband of Clara Anne Kennedy, to secure her obligation as lessee under a lease from Mrs. Mellinger. To indemnify the surety in case of loss, J. G. Kennedy executed an agreement to secure it against loss in the event of his wife's default, and deposited with it 1,837 shares of stock in the Rich-Sampliner Knitting Mills Company. Before the bond and the collateral agreements were executed, the casualty company received two letters on the stationery of the Rich-Sampliner Knitting Mills. The first, dated September 24, 1925, was signed by Samuel S. Sampliner on behalf of the Knitting Mills Company, and contained a statement as to the book value of the Knitting Company stock, and the writer's opinion of J. G. Kennedy's integrity and financial responsibility. The second letter was dated September 25, 1925, and signed by Sampliner individually. It was addressed

to the appellee, directed to the attention of Mr. Fischman, its agent, and its text is as follows: "Regarding the bond for Mr. J. G. Kennedy, will state that in case there is a default on the bond which your company will write for him, I agree to purchase the Rich-Sampliner common stock at a basis of $3.00 per share on lease in order to cover your loss."

The lease was breached, and, after suit on the bond by the obligee, appellee settled. The stock deposited by Kennedy is valueless, and the suit below was to recover the surety's loss from the estate of Sampliner.

Appellee's agent, Fischman, was its principal witness at the trial. He testified that he telephoned to Sampliner and told him that Kennedy had asked him to sign a lease bond for his wife, and had offered to give his personal indemnity and stock of the Rich-Sampliner Company as security. Sampliner replied that the stock was worth ten to twelve dollars a share; that he had referred Kennedy to the witness; that he (Sampliner) knew about the lease, and had gone over it, and was familiar with the property. The witness told Sampliner that he would not take the stock as collateral inasmuch as it was not a listed security and had no market. Sampliner replied that he had already agreed with Kennedy to guarantee the stock; that he would be willing to write a letter to the effect that he would take the stock at a price that would save appellee harmless in case of default on the lease. The witness again talked with Sampliner on September 25th, and told him that he wanted him to put his statement in writing. Thereafter the letter of September 25th was received, and on the faith of that letter and Kennedy's indemnity agreement and deposit of stock the bond was written. Fischman's testimony was objected to on the ground that it tended to vary the terms of a written agreement, and it is the admissibility of this and corroborating evidence which forms the basis for the appeal.

It is not now contended that Fischman was not a competent witness on the ground that his testimony was as to matters equally within the knowledge of the deceased. The rule is well settled in Ohio that, in an action by a corporation against an executor or administrator, the officer or agent of the corporation is not to such extent a party in interest as to disqualify him as a witness to facts that occurred prior to the death of a decedent. Cockley Milling Co. v. Bunn, 75 Ohio St. 270, 79 N. E. 478, 116 Am. St. Rep. 741, 9 Ann. Cas. 179. This being a law case tried by the court without a jury, in pursuance of stipulation of counsel, and no findings of fact having been made or requested, the only question for review properly reserved by exception is the one relating to the admissibility of evidence on the ground heretofore stated. Brown v. Harvey Coal Corp., 61 F.(2d) 624 (C. C. A. 6).

This brings us to a consideration of the writing relied upon as a basis for recovery. The appellants' contention is that there is no ambiguity therein that necessitates the aid of extrinsic evidence to dispel, and that the subject-matter is sufficiently certain and definite; and that, inasmuch as Sampliner's undertaking was by the terms of the instrument an undertaking to indemnify the appellee in the event of default on the bond which it might write for J. G. Kennedy, such undertaking cannot be extended by implication or by parol evidence into an obligation to indemnify against default on a bond of Mrs. Kennedy.

Although there may be latent ambiguity in the phrase "regarding the bond for Mr. Kennedy," since it may be as susceptible of application to a bond written at the instance or request of Kennedy as to one upon which Kennedy is the obligor, it seems to us that the question presented is not so much whether the writing was ambiguous as whether extrinsic evidence was admissible to show the situation of the parties and the surrounding circumstances when the contract was entered upon, so that its subject-matter might be understood and identified. Even conceding that the language was clear and unambiguous so far as it went, it was still open to the plaintiff by parol evidence to identify the bond upon which default occurred as the identical bond mentioned in the agreement—and this without doing violence to the parol evidence rule.

"Previous and contemporary transactions and facts may be very properly taken into consideration to ascertain the subject-matter of a contract, and the sense in which the parties may have used particular terms, but not to alter or modify the plain language which they have used." Brawley v. U. S., 96 U. S. 168, 173, 24 L. Ed. 622. "It is common learning in the law that parol evidence is admissible * * * to show the situation of the parties and the surrounding circumstances when it [the contract] was entered into and to apply it to its subject. * * *" Jones v. New York Guaranty & Indemnity Co., 101 U. S. 622, 631, 25 L. Ed. 1030. "It [the evidence] merely went to identify what the writing in the policy referred to, as a part

or parcel of the contract, like a reference in one deed or contract to another deed or contract." Clark v. Manufacturers' Ins. Co., 8 How. 235, 246, 12 L. Ed. 1061. See, also, Henderson v. Mound Coal Co. (C. C. A.) 181 F. 487, 490; Merriam v. U. S., 107 U. S. 437, 441, 2 S. Ct. 536, 27 L. Ed. 531; Marks v. Cowdin, 226 N. Y. 138, 123 N. E. 139 (Judge Cardozo), and our recent discussion in Remington Rand Business Service v. Walter J. Peterson Co., 58 F.(2d) 11.

The judgment below is affirmed.