## BLACK HARDWARE CO. v. MT. VERNON–WOODBERRY MILLS, Inc.

### No. 9930.

Court of Civil Appeals of Texas. Galveston.

April 20, 1934.

Rehearing Denied May 17, 1934.

J. W. Lockett, of Houston, for appellant.

Baker, Botts, Andrews & Wharton, S. H. German, and Dillon Anderson, all of Houston, for appellee.

PLEASANTS, Chief Justice.

This suit was brought by appellee against appellant to recover damages for the alleged breach of a contract for the sale by appellee and purchase by appellant of 200 rolls of cotton duck manufactured by appellee.

The petition alleges that the contract for breach of which the suit is brought was made about January 27, 1930, by defendant and the Turner-Halsey Company, the duly authorized agent of plaintiff. The contract is set out in full in the petition and by its terms the plaintiff agreed to sell and defendant agreed to purchase 200 rolls of cotton duck manufactured by plaintiff to be designated and specified out of a list attached to the contract of many different grades, widths, and prices of cotton duck manufactured by plaintiff. The pleaded contract further provides that the defendant had 90 days in which to make such specification, and if defendant did not make the specification within the 90 days, plaintiff had the right to specify from the list attached to the contract the 200 rolls to be purchased by the defendant. It is then alleged, in substance, that the defendant did not make the specification within 90 days, but that after the execution of the contract, defendant in performance thereof specified a number of shipments to be made by plaintiff to defendant, such specifications being made from the list attached to the contract; that some of these shipments were made during the months of February, March, and April before the expiration of the 90 days; that plaintiff did not at the expiration of the 90 days exercise its right to specify the remaining portions of the 90 rolls contracted to be purchased by the defendant, but forebore to make such specifications for a reasonable length of time to permit defendant to fully comply with its contract; that the extension of this provision of the contract was recognized by both plaintiff and defendant in correspondence and transactions between them and by tacit understanding, and the defendant is now estopped to deny that the extension of the 90-day provision of the contract was acquiesced in by it and in no way destroyed the contract or lessened the full force of its other provisions; that in the months of February, March, April, May, June, July, August, September, October, and November of 1930 the defendant continued to specify and give shipping orders, and the plaintiff continued to ship under said contract of January 27, 1930, and at the prices specified and named in said contract, until in December of said year 47 rolls of the 200 rolls had been specified and delivered to the defendant under the contract. No further specifications or shipping directions were received by plaintiff thereafter.

It is then alleged that no final repudiation of the contract was made by the defendant until on or about February 1, 1931, when plaintiff's representative called upon defendant at its office in Galveston, at which time defendant expressly notified plaintiff of its intention to repudiate its contract; that plaintiff was ready, able, and willing at all times during and after the execution of the contract and up to the time of its repudiation by defendant to fully comply with all the provisions of the contract; that because of the breach of its contract by the defendant and its refusal to specify the remaining 153 rolls of duck it could and would have specified and ordered under the contract, plaintiff has the right to now make such specification and to recover the difference between the market price of such cotton duck rolls at Galveston at the time of the breach of the contract and their price as fixed by the contract.

The petition first specifies the largest staple size of cotton duck within the range allowed under the contract and alleges that because of depreciation in the market value of the duck so specified plaintiff is entitled to recover from defendant the sum of $12,393. It is then alleged in the alternative, that if plaintiff is not entitled to make the specification of the large sized and higher priced cotton duck as a basis for fixing its damages, it should recover the difference between the market value of cotton duck of the average size and price of the 47 rolls specified and purchased by defendant under the contract before its repudiation, which the petition alleges to be $2,500.

The defendant answered by a general demurrer, a number of special exceptions, the nature of which so far as material in the decision of the questions presented by this appeal will be hereinafter indicated, also by a

general denial and a special plea that the contract was without consideration, unilateral, and void for lack of mutuality.

The cause was tried in the court below without a jury and resulted in a judgment in favor of plaintiff. The original entry of the judgment fixed the amount of plaintiff's recovery at the sum of $1,779.73, but on motion of plaintiff, made and heard after adjournment of the court, the defendant having been duly notified and appearing by its attorney, the court found that there was an unintentional, mathematical clerical error in the calculation of the amount stated in the original judgment, and that the amount should have been the sum of $1,998.94. The original judgment was ordered corrected in the respect indicated by a judgment then rendered and entered nunc pro tunc.

The trial court at the request of appellant filed conclusions of fact and law which contain the following fact findings:

"1. On or about the 27th day of January, 1930, plaintiff and defendant entered into a contract by the terms of which plaintiff agreed to sell and defendant agreed to purchase 200 rolls of cotton duck, under the terms and conditions contained in Exhibit #1, by the pertinent provisions of which said rolls were to be specified by defendant before the expiration of ninety days from the date of said contract, from a list of duck of varying widths and grades, which list was incorporated into said contract by reference. Said list, dated February 13, 1927, contained prices upon each specification, grade or size of duck, over a range from 22 inch #12 to 90 inch #2/0, and from 32¢ per yard to $5.97 per yard, although the highest staple goods within the range allowed in said contract was 120 inch #4 wide duck listed at $3.16 per yard. The contract price of the 200 rolls covered was 37½% and 5% off of said list price on Mt. Vernon wide and sail duck, and 35% and 5% off of said list price on Woodberry sail duck. The above names and description of the duck referred to are trade names, of well defined signification in the duck business, known to both parties. Said contract contained the following provision:

" 'The buyer agrees that any balance of this contract unspecified within the required time, may, at seller's option, be delivered at seller's selection, either of staple goods within the range allowed in this contract or of goods like those already specified under it, as though specified by the buyer.'

"2. During the ninety days succeeding the execution of the contract, the defendant made certain specifications of cotton duck thereunder, but did not specify the entire 200 rolls; thereafter, and until some time in January, 1931, both plaintiff and defendant treated the contract as in full force and effect in all respects, save and except with respect to the time limitation for the specifications to be made by defendant, and in this respect both parties treated the contract time as extended for a reasonable length of time. I find that in the light of prior transactions between the parties, nine months was a reasonable time within which the contract was to be performed after the expiration of the ninety days referred to therein; and that the parties by tacit understanding and agreement in this matter, and under the custom in the business recognized by both parties in this and in prior performance of similar or identical contracts, treated the terms and conditions of the contract of January 27, 1930, as binding in all respects save with respect to the time for performance, which I find was extended for a reasonable time.

"3. Forty-seven of the 200 rolls covered by said contract were specified before January, 1931, and on or about the first day of February, 1931, the defendant repudiated and breached said contract, and advised plaintiff that it would neither specify nor accept further rolls under said contract. * * *

"5. I find that during the months of May, June, July, August, September, October and December of 1930, the defendant, though receiving correspondence from plaintiff in which specifications for each order against said contract were acknowledged, and in which reference was made to the contract in question; and though receiving invoices covering each shipment of goods specified at contract prices and each invoice having reference to the contract, never denied the existence or binding force of the contract, or gave any indication whatever to plaintiff of the existence of any question as to the existence and binding force of the contract in question; that plaintiff, in reliance upon said conduct on the part of defendant, and upon its understanding that the full 200 rolls would be specified within a reasonable time, postponed exercising during said period its contractual right to specify the balance of goods in plaintiff's selection, due under said contract. I find that there was no custom or practice in the duck and/or ship chandelry business (in which the plaintiff and the defendant's department involved herein were engaged, respectively) of treating such contracts as the one sued upon,

as options; and particularly that no such custom entered into the contract in question.

"6. I find that the defendant never had ordered, and had no use in its business for the smallest size and specifications of duck on the list referred to in the contract; that the 47 rolls of duck specified by defendant under said contract were substantially the same upon an average as the duck which it had theretofore specified on similar contracts with plaintiff; that the needs of defendant required sizes and specifications within a certain range, such range being that indicated by the specifications made of 47 rolls under said contract; that had defendant specified the remaining 153 rolls purchased under said contract, it would have specified rolls within the same range and in approximately the same proportion as it had previously specified rolls under the said contract. I further find that the price of duck specified by the defendant and which defendant would have specified had it not breached the contract, averaged 44½¢ per yard, contract price.

"7. I find that the reasonable market value of duck at the time of defendant's breach, over the same range and of the same proportion as that specified by defendant, was 30¢ per yard in lots of 153 rolls, that each roll contained approximately 100 yards; that the difference between the contract price and the reasonable market price of the duck that defendant would have specified under the contract, at the date of the repudiation and breach by defendant, was 14½¢ per yard."

The court then finds from the evidence, in effect, that if plaintiff had shipped the 153 rolls to defendant after being notified that it would not accept such shipment, the necessary expenditure of plaintiff would have been increased and plaintiff's damage correspondingly increased; and further found:

"10. I find that at all times from the execution of the contract in question until defendant's repudiation thereof in February, 1931, plaintiff was ready, able and willing to ship upon defendant's specification the remaining number of rolls due under said contract as required under and by the terms thereof.

"Conclusions of Law.

"Upon the foregoing findings of fact I conclude as a matter of law—

"1. That plaintiff is entitled to recover damages for breach of said contract in the difference between the contract price and the reasonable market value at the time of the breach thereof, of 153 rolls of such duck as I have found defendant would have specified had such contract not been breached, less the amount of freight which plaintiff was obligated to pay upon such rolls as were specified by defendant. Such difference being 14½¢ per yard on 15,300 yards, or $2,218.50 less $219.56 freight, or $1,998.94 (at the time of the entry of judgment herein due to an error in calculation the amount of the judgment entered was $1,779.73 which said amount I believed to represent the correct computation based upon the measure of damages set out herein).

"2. I conclude the contract in question was valid and binding on both parties; that the time for the performance thereof was extended for a reasonable time after the original ninety day period thereof which was nine months, and that defendant is estopped to deny the continuation in force of all the terms thereof save those pertaining to time for performance (and) or that the nine months was a reasonable time. I conclude that plaintiff did not owe defendant the duty of specifying or shipping duck or doing any other act toward the performance of the contract after defendant refused to proceed further therewith, same amounting in law to a breach by the said defendant. I conclude in this connection that plaintiff's failure so to specify and ship mitigated the damage suffered by plaintiff. To which defendant excepts. August 4, 1932.

"Roy F. Campbell, Judge Eightieth District Court."

These fact findings of the trial court are all amply sustained by the evidence and are not attacked on this ground by any of the 16 propositions presented in appellant's brief.

Appellant's main contention is, that the contract on its face was void for want of consideration, uncertainty, and lack of mutuality. The only consideration for appellant's promise to buy and pay for the 200 rolls of cotton duck was appellee's promise to ship defendant the duck as ordered by it at the price and freight charges specified in the contract. Of course, appellant does not question the general rule that one promise is sufficient consideration for another, but insists that the promise of appellee to sell and ship appellant the duck is so indefinite and conditional under the terms of the contract as to render it unenforceable, and therefore could not be held as any consideration for appellant's promise to buy.

The contract on its face purports to be an agreement by appellant to purchase from appellee 200 rolls of duck, to be selected and designated by appellant from the list of appel-

lee's manufactured or general stock of duck attached to the contract, and pay therefor the amount specified on said list; and a corresponding agreement by appellee to sell and ship to appellant the duck so selected and designated by it. We cannot agree with learned counsel for appellant that because of the fact that the list attached to the contract and out of which the 200 rolls were to be selected contained many different grades, widths, weights, and prices of duck comprising the rolls to be selected, there was no contract as there was no meeting of the minds of the parties as to the subject-matter of the agreement.

It is an old legal maxim that, "that is certain which can be made certain." Appellant by letter expressly accepted and ratified the contract, and seems to have found no difficulty in the various orders made by it and filled by the appellee prior to appellant's repudiation of the contract, in selecting the duck which it desired to purchase.

The test applicable in the construction of contracts of this kind is whether there is reasonable certainty as to the subject-matter. In the case of Bowen v. Virginia Lee Candies (Tex. Civ. App.) 44 S.W.(2d) 502, 503, it is held that a contract for the sale of not less than $60 worth of candy per month for a specified period, to be selected by the buyer, was a mutual obligation contract, on the ground, as stated in the opinion of the court, that "the price payable and the amount of candy to be delivered was ascertainable with reasonable certainty, and was not entirely optional with appellee or conditioned upon his will."

A case almost identical on its facts to the instant case is Whitman & Co. v. Namquit Worsted Co. (D. C.) 206 F. 549, 554, in which the plaintiff Worsted Company agreed to sell defendant Whitman 50,000 pounds of three grade white worsted yarn and defendant agreed to buy at prices specified in the contract for each of the 48 species of yarn offered for sale by the company, with the right in defendant to specify the species which he desired to purchase. In the cited case the court held:

"That the defendant agreed to purchase 50,-000 pounds of three-grade white worsted yarn, and that this was a certain and definite agreement, which was not made indefinite and uncertain merely by reason of the fact that the defendant had the right to make variations within this general description."

Under a similar state of facts the same holding was made in the case of Carroll v. Melville Shoe Corporation (C. C. A.) 272 F. 49.

Our conclusion on this question is not in conflict with the cases of National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979, Johnson v. Breckenridge-Stephens Title Co. (Tex. Com. App.) 257 S. W. 223, or Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co. (C. C. A.) 114 F. 77, 57 L. R. A. 696, cited by appellant. We think each of these cases is easily distinguishable on the facts from the instant case, and the several contracts involved in those cases were properly held to be mere options. In this case the appellant expressly agreed to buy and appellee agreed to sell 200 rolls of duck manufactured or kept in stock by appellee to be selected by appellant from a list attached to the contract, and, as we have before pointed out, the kind and price of the duck was subject to easy identification by the appellant. Such a contract cannot be held to be only an option.

We have before stated that the contract upon its face was one which mutually obligated the appellee to sell and the appellant to buy the 200 rolls of duck as stated in the sales note which formed a part of the contract forwarded to appellant. If the contract should not be clearly so construed from its language, the evidence admitted by the court to explain the trade and business meaning of the terms used in the sales note, show that this construction should be placed upon the language, and the letter of appellant acknowledging receipt of the contract and requesting that it be protected thereby, and its subsequent order and acceptance of shipments made thereunder conclusively show that it so understood the contract. Merriam v. United States, 107 U. S. 437, 2 S. Ct. 536, 27 L. Ed. 531; El Paso & S. W. R. Co. v. Eichel & Weikel (Tex. Civ. App.) 130 S. W. 922; Jones & Co. v. Gammel-Statesman Pub. Co., 100 Tex. 320, 99 S. W. 701, 8 L. R. A. (N. S.) 1197; Chicago, R. I. & G. Ry. Co. v. Martin (Tex. Civ. App.) 163 S. W. 313.

The fact that the contract contains a provision exempting appellee from liability for delay or default in partial deliveries of duck ordered by appellant under the contract when such delays or default "results from strikes, fires, lockouts, and circumstances beyond the control of appellee" does not destroy the binding force and effect of the contract. Texas Seed & Floral Co. v. Chicago Set & Seed Co. (Tex. Civ. App.) 187 S. W. 747; Jones & Co. v. Gammel-Statesman Pub. Co., 100 Tex. 320, 99 S. W. 701, 8 L. R. A. (N. S.) 1197; Burt v. Deorsam (Tex. Civ. App.) 227 S. W. 354; Texas Farm Bureau Cotton Association v. Stovall, 113 Tex. 273, 253 S. W. 1101; 13 C. J. 377; 55 C. J. 345.

We have, in what we have before said, stated and determined all of the material questions presented by appellant's brief. While we have not set out and discussed all of the various assignments and propositions presented in the brief, all of them have been duly considered, and in view of our conclusions above expressed upon what we deem the decisive question raised by this appeal, none of appellant's propositions should be sustained.

It follows that the judgment should, in our opinion, be affirmed, and it has been so ordered.

Affirmed.