

# The Attorney General of Texas

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

May 8, 1981

Honorable Robert E. Stewart
Commissioner
Department of Banking
2601 North Lamar
Austin, Texas 78705

Opinion No. MW-336

Re: Whether the Department of Banking should approve the release of monies held in a trust account by the trust department of a bank that are in excess of 100% of the amounts paid by purchasers of prepaid funeral benefits to the seller under the provisions of article 548b, V.T.C.S.

Dear Commissioner Stewart:

You have asked our opinion whether the Department of Banking should approve the release of monies held in a trust account by the trust department of a bank pursuant to the provisions of article 548b, V.T.C.S. That statute vests authority in the Department of Banking to regulate the sale of prepaid funeral contracts.

As we understand the facts as you have related them to us, a cemetery corporation has designated the trust department of a bank to be the custodian trustee of 100% of all monies collected by the corporation from the sale of prepaid funeral contracts. The terms of the trust require that cash or the cash equivalent of 100% of all amounts collected from all unmatured and uncancelled funeral contracts sold by the corporation be maintained in the fund at all times. The corporation has advised the department that from time to time it will request that monies held in the trust fund by the trustee bank in excess of 100% of the amounts paid by the purchasers of prepaid funeral contracts be released to the corporation which is also the seller of the prepaid contracts. According to the terms of the trust agreement between the corporation and the bank, any such release of funds must have the prior approval of the Department of Banking.

Consequently you inquire whether you can approve such a release after you are notified that the trust funds remaining do not total less than the total of 100% of all monies collected by the corporation from purchasers of all unfulfilled and uncancelled prepaid funeral contracts and, further, that only such sums exceeding such total are released to the corporation seller. We conclude that this question should be answered in the negative.

p. 1093

As originally enacted by the legislature in 1955, section 5 of article 548b provided that:

> ... all funds collected under contracts for prepaid funeral benefits ... shall be placed in a state or national bank, or building and loan association ... to be held in a trust fund in this State for the use, benefit and protection of purchasers of such contracts.

Acts 1955, 54th Leg., ch. 512, at 1293.

Any withdrawal of funds from the trust account was strictly controlled such that in no event could more funds be withdrawn from the trust account than were originally placed into the fund under any one contract, other than through the payment of accrued interest on those funds.

The statute was upheld against constitutional attack in Falkner v. Memorial Gardens Association, 298 S.W. 2d 934 (Tex. Civ. App. - Austin 1957, writ ref'd n.r.e.). Appellees, sellers of prepaid funeral contracts, contended that the statute would put them out of business because it required that all funds collected be placed in trust without any recognition for the expenses incurred by the seller. The court rejected this complaint saying it was a matter for the legislature. The court held that although the legislature saw fit to impose on the business a regulation that seemed onerous to the seller, the statute was not unconstitutional because the legislature was authorized to impose such regulations in the public interest.

In 1963, the statute was amended to provide, inter alia, that when a contract matured if there were not sufficient funds available to equal 100% of the amount paid under the contract, the seller could make up the difference by withdrawing funds accumulated on other contracts which were in excess of 100% of the amounts paid in on those other contracts. Acts 1963, 58th Leg., ch. 496, at 1304.

In addition, the purchaser or his estate was entitled at maturity to withdraw a proportionate part of the interest earned on all funds in trust when the total funds on deposit including accrued interest exceeded 100% of the amounts paid in on all contracts. The seller was precluded from receiving any accrued interest.

The statute as amended in 1967 now reads so as to allow the seller to elect to secure funds collected from the sale of prepaid funeral contracts through contracts of insurance with companies licensed in Texas in lieu of placing them in the traditional trust accounts. Since the 1967 amendments, if the seller elects to place the funds collected in a trust account, it can withdraw part of the funds on deposit within the limitations established by section 5 of the act. Those limitations are as follows:

> 1. The funeral home (or other entity collecting the funds) may use any amounts in excess of one hundred percent of the contract price which may have accumulated at maturity to make up the difference on another contract which, at maturity, does not have funds available equal to one hundred percent of its contract price.

2. The seller may withdraw funds out of the accrued interest or income at any time to pay reasonable and necessary charges made by the trustee financial institution or to pay taxes incurred by the account.

3. Upon maturity of the contract and full performance by the seller or upon proper cancellation prior to maturity, the seller may additionally withdraw a specified proportionate amount of the accrued interest or income of the contract.

Of course, funds in the account may be released upon maturity in fulfillment of the contract. These are the only circumstances under which the seller is permitted by the statute to withdraw funds which are placed in trust accounts.

Although it has been suggested that section 1a of the act allows the Department of Banking to permit the release of trust monies in excess of one hundred percent of the contract price, we do not construe section 1a to provide such authority per se. Article 548b, section 1a, provides, in pertinent part:

No organization covered by this Act shall solicit by any means whatsoever the designation by an individual of funeral services or merchandise which he desires to be provided to be paid out of any fund, investment, security, or contract, to be created or purchased by or for such an individual at the suggestion or solicitation of the organization, unless such a fund is to be created by a contract of insurance with an insurance company licensed in Texas, or unless such fund, investment, security, or contract shall have been approved by the Department as safeguarding the right and interests of the individual, his heirs and assigns, to substantially the same or greater degree as is provided with respect to funds regulated by section 5 hereof. (Emphasis added).

This section permits approved deviations from the terms of the act which are equal to or greater than the safeguards provided by statute. Therefore, section 1a cannot be used to allow additional instances under which funds in excess of one hundred percent of a prepaid funeral services contract price may be withdrawn by the provider of services unless the deviation is found by the Department of Banking to provide safeguards that are substantially the same or greater than those provided with respect to funds regulated by section 5. Legislative intent to protect the principal sum of the prepaid funeral service contract is evidenced by section 5 of the Act.

We believe that the legislative history and present language of the statute clearly reveal the legislative intent that funds collected from purchasers of prepaid funeral contracts are to be protected by the requirements imposed by the statute or by substantially the same or more stringent requirements as approved by the Department of Banking. The statute taken as a whole clearly contemplates that, where a seller elects to place the funds in a trust account as opposed to an insurance contract, those funds are to remain on deposit and neither the principal funds nor the income they

produce may be withdrawn except in the limited instances and for the particular purposes specified in the statute. Where a statute provides for specific exceptions to its basic provisions and terms, the intent is clear that no other exceptions apply. Unigard Security Insurance Company v. Schaefer, 572 S.W. 2d 303 (Tex. 1978); State v. Mauritz-Wells Co., 175 S.W. 2d 238 (Tex. 1943); State v. Richards, 301 S.W. 2d 597 (Tex. 1957). Therefore, we conclude that a corporation seller choosing to operate under the plan provided by section 5 of article 548b may withdraw funds from the trust accounts only under the specific instances set forth in that section. The seller has the option of submitting an alternative plan to the Banking Board which plan may be approved if it provides substantially the same or greater protection than that provided by the section 5 requirements.

## SUMMARY

The Department of Banking should not approve the release of monies held in a trust account at times and for purposes not permitted by section 5 of article 548b, V.T.C.S., unless the Department of Banking finds such deviations from the act provide safeguards that are substantially the same or greater than those provided in section 5.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Catherine Fryer
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Catherine Fryer
Rick Gilpin
Jim Moellinger
Bruce Youngblood