## AUSTIN MACHINERY CO. OF MICHIGAN v. CONSOLIDATION COAL CO.

## CONSOLIDATION COAL CO. v. AUSTIN MACHINERY CO. OF MICHIGAN.

### Nos. 6377, 6378.

Circuit Court of Appeals, Sixth Circuit.

Dec. 12, 1933.

See, also, 67 F.(2d) 775.

Glenwood C. Fuller, of Grand Rapids, Mich. (Waring, Walker & Cox, of Memphis, Tenn., on the brief), for appellant Austin Machinery Corporation.

Joseph S. Graydon, of Cincinnati, Ohio (Maxwell & Ramsey, of Cincinnati, Ohio, Metcalf, Metcalf & Apperson, of Memphis, Tenn., and Milbank Tweed, Hope & Webb, of New York City, Wm. P. Metcalf, of Memphis, Tenn., Arthur A. Gammell and Charles D. Kyle, both of New York City, on the brief), for appellee Consolidation Coal Co.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

In July, 1923, Austin Machinery Corporation (herein called Austin of Virginia) shipped by rail to Clark-Hunt Contracting Company (herein called Clark-Hunt) at Darling, Miss., a drag line machine with sight draft for part and notes for the balance of the purchase price, $43,500, attached to the bill of lading. Austin of Virginia charged the purchase price on its books against Clark-Hunt. When the machine reached Darling, Clark-Hunt, by means of a replevin suit against the railway company, obtained possession of it without paying the draft. The National Surety Company (herein called surety company) was surety on the replevin bond. Austin of Virginia was substituted as a defendant for the railway company and in June, 1924, it recovered a judgment against Clark-Hunt and the surety company for $43,500 with interest. Upon appeal this judgment was affirmed but a new trial awarded upon the question of damages. In June, 1925, Austin of Virginia recovered a second judgment, affirming that of June, 1924, and allowing additional damages. These judgments are hereafter referred to as the Mississippi judgments.

On June 7, 1924, Austin of Virginia assigned the June, 1924, Mississippi judgment to Metropolitan Trust Company (herein called Metropolitan) as collateral security for the payment of a note for $250,000. Consolidation Coal Company (herein called Consolidation) was guarantor of this note, which was renewed periodically. In March, 1925, Metropolitan consolidated with Chatham-Phœnix and the note became payable to Chatham-Phœnix and was renewed from time to time until October 28, 1925. On June 9, 1925, Austin of Virginia executed an assignment to Chatham-Phœnix of the June, 1925, Mississippi judgment as collateral for the payment of the note, and, on July 30th, Consolidation guaranteed its payment. Upon the maturity of the note, October, 28, 1925, Consolidation, upon demand of Chatham-Phœnix, paid it and in consideration of the payment Austin of Virginia on that date executed its note for $250,000 to Consolidation.

On July 28, 1926, Chatham-Phœnix, by direction of Austin of Virginia, assigned the June, 1924, Mississippi judgment to Consolidation as collateral for the payment of the $250,000 note which it held against Austin of Virginia.

On October 12, 1926, Austin of Virginia, for the use of Metropolitan, Chatham-Phœnix, and Consolidation, assignees, instituted suit in the chancery court of Shelby county, Tenn., against the surety company upon the June, 1924, Mississippi judgment as amended and affirmed by the June, 1925, Mississippi judgment. This suit was removed to the United States District Court for the Western District of Tennessee and was transferred to the law side as No. 3041, wherein, on December 30, 1927, Austin of Virginia recovered a judgment for the use of the assignees

in the sum of $63,283.39. The surety company appealed to this court [35 F.(2d) 842] and, after a remittitur was accepted, the judgment was affirmed. Final judgment on the mandate was entered in the District Court on February 10, 1930, and the surety company paid to the clerk the sum of $62,114.26 in discharge thereof. After satisfaction of certain attorney's fees, costs, and expenses, there now remains in the registry of that court a balance of $48,447.67.

While that suit was pending, Chatham-Phœnix, trustee under a first mortgage of Austin of Virginia, on July 18, 1928, filed its original bill in the United States District Court for the Western District of Michigan against Austin of Virginia to foreclose the mortgage and to have a receiver appointed. Consolidation was the owner of the bond issue of $3,000,000 secured by the mortgage and of 37 per cent. of the capital stock of Austin of Virginia. It was also an unsecured creditor. On the same date O. A. Seyferth, president of Austin of Virginia, was appointed receiver of all the property and assets of that company, and an order was entered requiring creditors to file claims. The order directed that:

" * * * All claimants shall in their proofs (shall) state what, if any, security they hold for the payment of the same, and if they claim priority in the payment of their claims they shall so state and give reasons for such claim or priority."

Consolidation filed two claims, one for $3,702,916.65 evidenced by bonds secured by the mortgage, and another aggregating $2,201,063.74 in the nature of an open account. This account was verified by H. H. Snodderly, vice president, and one item thereof was the note for $250,000 dated October 28, 1925. The printed form of the verification required by the master and used by Snodderly stated:

" * * * That * * * the Consolidation Coal Company has not, nor has any person by its order, or to the knowledge or belief of said deponent for its use, had or received any manner of security for either of said debts whatever. * * * "

On December 28, 1928, the master filed his report and, after reducing the amount because of an error in calculation of interest, allowed the open account as an unsecured claim.

On February 18, 1928, the Michigan court entered a "Foreclosure Decree" which adjudged that the "first mortgage and a supplemental indenture constituted a valid and subsisting lien *upon all the right, title, and interest of the defendant, Austin Machinery Corporation,* in and to all and singular the following described property and assets * * * prior and superior to all interests, liens, equities and claims of the defendant, Austin Machinery Corporation, and of all persons claiming by, through or under it. * * * " (Italics ours.)

The description of the "property and assets" is contained in subparagraphs of the foreclosure decree from A to I, inclusive. Subparagraph H is as follows:

"Also, all property and assets of every name and nature not hereinbefore particularly described or referred to *and all beneficial interest therein* (including but not thereby limiting the generality of the foregoing, any materials, supplies, merchandise or chattels which ordinarily are the subject of sale in the usual course of business, cash, claims, *book accounts and bills and notes receivable*); *which were acquired or taken possession of by the Receiver or Receivers during the receivership and not disposed of.*" (Italics ours.)

The decree required the receiver to file before the sale a statement showing separately the book accounts and bills receivable. He filed this statement on April 9, 1929, but stated that it was made up as of March 31st and in it, under the heading "C-Book Accounts," he reported the following item: "Clark-Hunt Contracting Co., $82,033.23." This account comprised several items, one of which was for $43,500, the purchase price of the drag line machine. After publishing a notice of sale which contained a general description of the property and assets to be sold and which referred bidders to the foreclosure decree for a fuller description, the master, on April 16, 1929, sold the designated property and assets to Snodderly, who represented Consolidation, the holder of the mortgage bonds. On April 23, 1929, Snodderly assigned his bid to Consolidation and the Michigan court confirmed the sale to the latter. The decree confirming the sale, describes the property sold as " * * * the property and assets in and by the final decree" (foreclosure decree) "directed to be sold."

On May 1, 1929, the master executed his deed to Consolidation as directed by the confirmatory decree.

On May 2, 1929, Consolidation caused Austin Machinery Company (herein called Austin of Michigan) to be incorporated with an authorized capital of 10,000 shares of no par value but with a declared value of $65. Austin of Michigan was wholly a subsidiary

of Consolidation. Snodderly was elected chairman of its board of directors and Seyferth, the receiver of Austin of Virginia, was made president and general manager. On May 3, 1929, Consolidation, by proper instruments, sold and transferred to Austin of Michigan all the receivership assets (with certain exceptions not here material) acquired through the foreclosure sale. The contract of sale and the instruments of transfer were expressly limited in terms to the receivership assets acquired by Consolidation.

Thus matters stood when the surety company paid into the Tennessee District Court the amount of the judgment recovered against it in No. 3041. Thereupon Austin of Michigan filed its intervening petition in that cause and sought a recovery of the fund paid in by the surety company. The basis of its claim was that this fund, through the Mississippi judgments and the subsequent Tennessee judgment, represented the Clark-Hunt account for the drag line machine which it claimed to have purchased from Consolidation. The petition failed because the court was of the opinion that it had no jurisdiction to entertain it and on September 3, 1930, Austin of Michigan filed its original bill against Consolidation in the Tennessee District Court in which it sought to have the fund remaining therein paid to it upon the same theory it had advanced in the petition for intervention.

The case was referred to a master. He reported in substance that the item of $43,500, the price of the drag line machine carried on the books of Austin of Virginia, was a receivership asset which had been sold to Consolidation and that the fund, through the Mississippi judgments against Clark-Hunt, and the Tennessee judgment against the surety company, represented this asset. But the master further found that Consolidation had not resold this item of the Clark-Hunt account to Austin of Virginia and that Austin of Michigan was not therefore entitled to the fund. The court confirmed both findings and dismissed the bill.

Each party appealed from that portion of the decree adverse to it.

█ We think the master and the court both erred in holding that the item of $43,500 carried on the books of Austin of Virginia when the receiver was appointed, represented a debt or obligation due Austin of Virginia for the drag line machine. This item had long since been converted by successive proceedings, first, into the Mississippi judgments, then into the Tennessee judgment, and, finally,

into the fund in the registry of the court, and the Mississippi judgments had been transferred to Consolidation by an absolute assignment and by subrogation nearly two years before the commencement of the foreclosure proceedings. Austin of Virginia could not itself have asserted it as a liability against Clark-Hunt and the receiver could claim no greater nor better title to it than Austin of Virginia. The receiver acquired and the court administered and sold only such "beneficial interest" as Austin of Virginia had in the item. As we understand subparagraph H of the foreclosure decree, the court did not purport to sell any interest in the account except that which Austin of Virginia owned.

█ The position of appellant that "book accounts and bills * * * receivable * * *" included in the foreclosure decree embraced this item at its full value is untenable. Neither the creditor nor the receiver, by carrying the item as a bookkeeping entry, could clothe it with a value or quality which it did not possess. The only interest in this item which the receiver acquired was the privilege of asking permission of the court to redeem the assignment to Consolidation by the payment of the note which it collaterally secured. For obvious reasons he made no such application. As to this item, the right to redeem the assigned account was all that was sold by the Michigan court to Consolidation, and since, in the sale to Austin of Michigan, Consolidation sold only what it had bought through the court, it follows that the right to redeem was all that Austin of Michigan acquired, and this right it has naturally not sought to exercise.

█ Appellant asserts that this interpretation violates the parol evidence rule. We think otherwise. The District Court did not determine the status and value of the account. It was not called upon to do so and we think it permissible, as between the parties hereto, to determine just what it actually represented. See Sampliner v. Maryland Cas. Co., 63 F. (2d) 332 (C. C. A. 6).

Because appellant has failed to show that it acquired title to or ownership of the fund in controversy, it is unnecessary to determine whether Consolidation waived its right to it by inadvertently failing to disclose the security to the Michigan court or whether it elected to rely, as a general creditor, upon the free assets of Austin of Virginia in the receivership proceedings.

We are the more satisfied with this result because the record shows that Seyferth, president and general manager of Austin of Mich-

igan, who conducted the negotiations with Consolidation, knew that Consolidation claimed the Tennessee judgment by virtue of its assignment; that he knew that Consolidation expressly denied that the judgment was a part of the receivership estate; and that he was fully cognizant that the purchase price was fixed upon the basis of the exclusion of the Tennessee judgment from the properties transferred.

Upon the grounds indicated the decree is affirmed and the cause remanded with directions to dismiss the bill.